# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**JULIO BARRETO, JR.**
**9811 Cahart Pl.**
**Silver Spring, MD 20903,**

**DR. HOWARD SACHS,**
**4200 Leland Street**
**Chevy Chase, MD 20815,**

**MATTHEW EDWARD MOORE**
**17809 Teri Dr.**
**Derwood MD, 20855,**

**ALAN DUNCAN**
**22719 Squire Ln.**
**Queen Anne, MD 21657,**

**ARTHUR SCOTT THACHER**
**355 John Owings Rd,**
**Westminster, MD 21158,**

**MARYLAND SHALL ISSUE, INC.**
**9613 Harford Rd., Ste C #1015**
**Baltimore, Maryland 21234,**

 *Plaintiffs,*

             **v.**

**MONTGOMERY COUNTY,**
 **MARYLAND**
**101 Monroe Street**
**Rockville, Maryland 20850,**

        *Defendant.*

## COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF AND FOR COMPENSATORY DAMAGES, NOMINAL DAMAGES AND ATTORNEY'S FEES AND COSTS

1

COME NOW, the Plaintiffs, through counsel, and sue the Defendant, and for cause state as follows:

**INTRODUCTION**

1.      This Complaint challenges Montgomery County Emergency Bill 23-26E, enacted by the Montgomery County Council on July 21, 2026, and signed into law by the Montgomery County Executive on July 27, 2026 ("Bill 23-26"). A copy of Bill 23-26, as enacted, is attached as Exhibit A. Bill 23-26 became effective immediately upon the signature of the Montgomery County Executive. That Bill was purportedly passed to bring the County law into alignment with the Maryland Supreme Court's opinion in *Engage Armament LLC v. Montgomery County, Md.,* 494 Md. 1 (2026). As more fully set forth below, that attempt to bring Montgomery County, MD ("the County" or "Montgomery County") into compliance with the Maryland Constitution and State law fails. Bill 23-26 also violates the Second Amendment to the United States Constitution, as construed by *New York State Rifle & Pistol Ass'n. v. Bruen*, 597 U.S. 1 (2022), and most recently, by the Supreme Court in *United States v. Hemani*, 146 S.Ct. 1677 (2026), and in *Wolford v. Lopez*, No. 24–1046, 609 U.S. ---, ---- S.Ct. ----, 2026 WL 1825723 (U.S. June 25, 2026). This Complaint challenges provisions of Chapter 57 of the County Code under Article XI-A of the Maryland Constitution (Count I), under the express preemption provisions of multiple State laws (Count II) and under the Second Amendment (Count III).

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this Complaint seeks relief afforded by 42 U.S.C. § 1983 for violations of Plaintiffs' rights arising under the United States Constitution. This Court has supplemental jurisdiction over claims

arising under State law, including claims arising under the Maryland Constitution, under 28 U.S.C. § 1367.

3.      The sole defendant, Montgomery County, Maryland, is a Maryland municipality and carries on its regular business and maintains its principal offices in Montgomery County, Maryland. The events, actions and omissions challenged in this Complaint arise in Montgomery County, Maryland. Venue is properly in this Court in this matter pursuant to 28 U.S.C. § 1391.

**MONTGOMERY COUNTY LAW:**

**Montgomery County Bill 4-21, Bill 21-22 and *Engage Armament***

4.      Montgomery County has chartered home rule under Section 3 of Article XI-A of the Maryland Constitution, and, under that provision, the County is empowered to enact only "local laws." Under these provisions, Montgomery County is not empowered to enact "general laws." Under Maryland law, "[a] general law ordinarily deals with 'a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.'" *Engage Armament*, 494 Md. at 25, quoting *Holiday Universal, Inc. v. Montgomery County,* 377 Md. 305, 315 (2003).

5.      "Where a charter county attempts to enact an ordinance on 'matters of significant interest to the entire state,' [this Court has] determined that it is not, in fact, 'a local law' under Article XI-A." *Engage Armament*, 494 Md. at 26, quoting *Assanah-Carroll v. Law Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 425 (2022). Thus, "some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state." *Cole v. Secretary of State*, 249 Md. 425, 434 (1968). Similarly, "[a] law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or

to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261 (1936).

6.      In 2022, the Montgomery County Council enacted Bill 21-22 to amend Chapter 57 of the County Code, 2022 Laws of Montgomery County, Chapter 36, relying on the authority provided by MD Code, Criminal Law, § 4-209(b)(1). Bill 21-22 was enacted "in response to the United States Supreme Court's decision" in *Bruen*. *Engage Armament*, 494 Md. at 14. Section 4-209 "authorizes local regulation of six types of conduct related to firearms in three areas, two of which are relevant here: 'with respect to minors'; and 'within 100 yards of or in a park, church, school, public building, and other place of public assembly.'" *Engage Armament*, 494 Md. at 13, citing MD Code, Criminal Law, § 4-209(b)(1)(i),(iii). "**Any local firearm regulation that does not fit within the scope of that authorization is expressly preempted by, among other provisions, § 4-209(a)**." *Id.* (emphasis added).

7.      Bill 21-22 provided:

"A place of public assembly" is:

(1) a publicly or privately owned:
    (A) park;
    (B) place of worship;
    (C) school;
    (D) library;
    (E) recreational facility;
    (F) hospital;
    (G) community health center, including any health care facility or community-based program licensed by the Maryland Department of Health;
    (H) long-term facility, including any licensed nursing home, group home, or care home;
    (I) multipurpose exhibition facility, such as a fairgrounds or conference center; or
    (J) childcare facility;
(2) government building, including any place owned by or under the control of the County;
(3) polling place;

4

(4) courthouse;
(5) legislative assembly; or
(6) a gathering of individuals to collectively express their constitutional right to protest or assemble.

Bill 21-22 also provided that "A 'place of public assembly' includes all property associated with the place, such as a parking lot or grounds of a building." A copy of Bill 21-22 is attached as Exhibit B.

8.    *Engage Armament* invalidated Bill 21-22 in part. The Maryland Supreme Court first defined a "place of public assembly" as used in Section 4-209(b)(1)(iii) to be "a location that is open for members of the public to gather for a common purpose, such as deliberating, legislating, worship, entertainment, education, or recreation." 494 Md. at 15. The Court held that "hospitals, community health centers, long-term facilities, childcare facilities, and 'government building[s], including any place owned by or under the control of the County,' are not fairly encompassed within the definition of a 'place of public assembly'" as used in Md Code, Criminal Law, 4-209(b)(1)(iii). 494 Md. at 16. *Engage Armament* therefore invalidated Chapter 57 to the extent it included those locations in its definition of "place of public assembly." *Id.*

9.    *Engage Armament* went further to address the plaintiffs' argument that Section 57-11(a) of the County Code "violates Article XI-A of the Maryland Constitution because it is not substantively a local law." 494 Md. at 25. In addressing that issue, the Court noted that "the cumulative effect of the amendments to Chapter 57—especially the expanded definition of place of public assembly and the elimination of the exception for permit holders from the restrictions in § 57-11(a)—prohibits all permit holders from carrying their firearms in a substantial portion of Montgomery County, including the State and county highways running through the County." 494 Md. at 27.

10. *Engage Armament* held that "§ 57-11(a), as amended, is not a local law because of its application to holders of State-issued wear-and-carry permits traveling on public highways who cross within 100 yards of a place of public assembly." 494 Md. at 28. The Court reasoned that the County law was a general law because "[a]pplying the County's regulation in that way imposes a burden on travel 'of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.'" *Id*., citing *Holiday Universal, Inc. v. Montgomery County*, 377 Md. 305, 315 (2003). The Court further noted that the County's law "burden[s] permit holders, including the many who reside outside the County but drive within it, with the choice of significant travel restrictions or regularly yielding their benefits as permit holders." 494 Md. at 28.

11. In so holding, *Engage Armament* went on to state:

> Our holding that § 57-11(a) is not a local law because it reaches non-Montgomery County residents traveling within the County on public highways should not be interpreted as a determination that an exception for travel on public highways would alone remedy the problem and transform § 57-11(a) into a local law. Any determination of whether an amended § 57-11(a) is a local law will depend on the scope of the amended law and evidence concerning its effects.

494 Md. at 28 n.23. *Engage Armament* concluded: "In sum, we hold that § 57-11(a), as amended and currently constructed, is not a local law, and so is beyond the legislative authority of the County." 494 Md. at 28.

**Montgomery County Bill 23-26:**

12. On July 21, 2026, the Montgomery County Council enacted Bill 23-26 and that Bill was signed by the County Executive on July 27, 2026. That legislation was passed as an

6

"emergency" measure and thus went into effect immediately upon signature by the County Executive. See § 2. Bill 23-26 amends Section 57-1 of the County Code to provide:

A "place of public assembly" is:

(1) a publicly or privately owned:
    (A) park;
    (B) place of worship;
    (C) school;
    (D) library;
    (E) recreational facility; or
    (F) multipurpose exhibition facility, such as a fairgrounds or conference center.
(2) government building open to the public for the business of government or community use;
(3) polling place;
(4) courthouse; or
(5) legislative assembly.

A 'place of public assembly' includes all property associated with the place, such as a parking lot or grounds of a building.

13.    Bill 23-26 did not amend Section 57-11(a) of the County Code, which continues to provide that "[i]n or within 100 yards of a place of public assembly, a person must not: (1) sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms." Bill 23-26, however, did amend Section 57-11(b) to state that Section 57-11(a) does not apply:

[T]o a firearm that is carried or transported **in a motor vehicle** if the firearm is: (A) locked in a container; or (B) a handgun worn, carried, or transported in compliance with any limitations imposed under Section 5-307 of the Public Safety Article of the Maryland Code, as amended, by a person to whom a permit to wear, carry, or transport the handgun has been issued under the Public Safety Article of the Maryland Code, as amended." (Emphasis added).

14.    Section 57-15 of Chapter 57 provides, with an exception for violations of Section 57-8 not applicable here, "[a]ny violation of this Chapter or a condition of an approval certificate

7

issued under this Chapter is a Class A violation to which the maximum penalties for a Class A violation apply." Under Section 1-19 of the County Code, the maximum penalties applicable for a violation of Chapter 57, as amended by Bill 23-26, are a $1,000 fine and 6 months in jail. Under Section 1-20(c) of the County Code, "[e]ach day any violation of County law continues is a separate offense." Neither Section 57-15 nor Section 1-19 contain any *mens rea* requirement and thus a violation of Chapter 57 is a strict liability offense.

**Section 57-10 of Chapter 57 of the Montgomery County Code:**

15.    Prior to the date of enactment of Bill 23-26, Section 57-10 of the County Code provided that:

It shall be unlawful for any person to have upon his person, concealed or exposed, or in a motor vehicle where it is readily available for use, any gun designed to use explosive ammunition unless:

(a) *Lawful mission.* Such person is then engaged upon a lawful mission for which it is necessary to carry a gun upon his person; or

(b) *Special guard, special police, etc.* Such person is employed as a special guard, special police officer or special detective and has been lawfully deputized by the sheriff for the county, or has been appointed a constable in the county, or has been licensed under the laws of the state, should such a law be enacted, to carry such gun and then is on or in the immediate vicinity of the premises of any employer whose occupation lawfully requires the employment of a person carrying a gun while in the discharge of the duties of such employment; or

(c) *Military service.* Such person is then lawfully engaged in military service or as a duly authorized peace officer; or

(d) *Hunting, target practice, etc.* Such person is engaged in lawful hunting, drill, training or target practice on property of which he is the owner or lessee or on property with the prior permission of the owner or lessee thereof; or (e) Going to or returning from hunting, target practice, etc. Such person is engaged in going to or from lawful hunting, drill training or target practice, or in delivering such gun to or carrying it from a gunsmith or repairman, or is engaged in any other lawful transfer of possession; provided, that such person shall be on or traveling upon a public highway or property of which he is the owner or lessee or on

8

property with the prior permission of the owner or lessee thereof; provided further, that such gun shall not be loaded with explosive ammunition.

16.    Bill 23-26 amended Section 57-10 to provide in addition:

This Section must not be interpreted to prohibit a firearm that is carried or transported on person or in a motor vehicle, as defined under the Maryland Transportation Article, as amended, if the firearm is:

(1) in a motor vehicle, locked in a container; or

(2) a handgun worn, carried, or transported in compliance with any limitations imposed under Section 5-307 of the Public Safety Article of the Maryland Code, as amended, by a person to whom a permit to wear, carry, or transport the handgun has been issued under the Public Safety Article of the Maryland Code, as amended.

Bill 23-26 did not otherwise amend or alter Section 57-10.

17.    As defined by Bill 23-26, "places of public assembly" literally encompass thousands of locations. Specifically, Montgomery County GIS Open Data shows that Montgomery County is home to 1,262 public bikeways, https://bit.ly/40MxYgZ, 605 houses of worship, https://bit.ly/3OLbfvG, 693 public parks, https://bit.ly/3qjHLfb (not including four federal parks and any privately owned "parks"), 258 private schools, https://bit.ly/3RyA0wd, 137 public elementary schools, https://bit.ly/40JIzcB, 40 middle schools, https://bit.ly/3PTz8RL, 25 high schools, https://bit.ly/4htvDNF, 42 public recreation centers, https://bit.ly/3WB1VhL, 10 colleges and universities, https://bit.ly/3Csn5Yr , 29 municipalities https://bit.ly/4g9jAE8, 45 Post Offices, https://bit.ly/4h8YAhZ, 38 fire stations, https://bit.ly/4gfCxVy, 15 public swimming pools, https://bit.ly/4awPtW2, 13 Metro stations, https://bit.ly/4aySiG0, and 11 MARC commuter train locations, https://bit.ly/3Cdo3b7. The County's 100-yard bans extend to any "park," including federal parks where carry with a permit is allowed by federal law. See 54 U.S.C. § 104906. The foregoing list of locations is underinclusive as it includes, for example,

9

only those "parks" that have been officially designated as such in the Montgomery County GIS Open Data system.

18.    Bill 23-26 is broader in its coverage. The County's definition of a place of public assembly to include parks was previously amended by Bill 4-21, enacted in 2021. 2021 Laws of Montgomery County, Chapter 36. Bill 4-21 amended Chapter 57 to specifically eliminate the prior definition of "parks" as including only parks "identified by the Maryland-National Capital Park and Planning Commission." A copy of Bill 4-21, as enacted, is attached as Exhibit C. Bill 4-21 also amended Chapter 57's definition of a place of public assembly as constituting "a place where the public may assemble, whether the place is publicly or privately owned" thus including privately owned parks for the first time. While Bill 21-22, passed in 2022, altered the definition of "place of public assembly," it retained Bill 4-21's broadened definition of a "park." Bill 23-26 likewise does not amend that broadened definition of a "park." Bill 23-26 is thus not limited to a private or public "park" designated as such by signage or otherwise. By common dictionary definitions, "parks" may include an "area maintained in its natural state" or "a piece of ground in or near a city or town kept for ornament and recreation." https://www.merriam-webster.com/dictionary/park.

19.    Using MNCPPC - Montgomery County Data Catalog - Property data, Plaintiffs have developed an interactive webpage consisting of a map of the areas that qualify as a "place of assembly" as that term is defined by Bill 23-26. Every location colored on the map represents a place encompassed by the definition of "a place of public assembly." Specific details of each parcel, including its address and classification according to County records, can be shown simply by dragging a mouse across individual areas. That interactive map can be found at https://public.johnlettman.com/montgomery/ and it demonstrates that there are at least 10,000

10

parcels comprising of over 7,900 acres (over 26 percent of the Count), that fall within the definition of a "place of public assembly" as defined by Bill 23-26. That includes specifically places designated as for "common use," by the County. By County land use category, there are, for example, 3,926 parcels labeled as "parks," comprising almost 16 percent of the County. Area calculations **exclude** 100-yard buffer zones. Plaintiffs incorporate that website and the interactive map by reference. A non-interactive Scalable Vector Graphic of this data is shown below:



20.     A privately or publicly owned location specified in Chapter's 57's definition of a "place of public assembly" need only be "open to the public." See *Engage Armament*, 494 Md. at 15. Similarly, while "a recreational facility" is not defined, it "encompass[es] only recreational facilities that are open to the public—with or without a fee—for recreational purposes." *Id.* at 16.

21.    The scope of places covered by Section 57-10, as amended by Bill 23-26, is even wider, as the prohibitions imposed by Section 57-10 are facially County-wide and thus not limited to particular places or within 100 yards of places of public assembly, as regulated by Section 57-11(a). On its face, Section 57-10 is not limited to "places of public assembly" within the meaning of MD Code, Criminal Law, § 4-209(b)(1)(iii).

22.    The 100-yard zones for each of these places of public assembly as identified by Bill 23-26 in which all firearms are banned encompass countless ordinary places of commerce, private and public property open to the public (and associated public sidewalks) and privately owned parking lots open to the public, including locations open to the public with or without a fee.

**Maryland State Firearms Law:**

23.    MD Code, Criminal Law, § 4-203(a)(1), provides "[e]xcept as provided in subsection (b) of this section, a person may not: (i) wear, carry, or transport a handgun, whether concealed or open, on or about the person; (ii) wear, carry, or knowingly transport a handgun, whether concealed or open, in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State." A violation of 4-203(a) is a strict liability offense, and a person may be convicted of the offense without regard to intent, knowledge or state of mind. *Lawrence v. State*, 476 Md. 384 (2021). A person convicted of a first offense of 4-203(a) "is subject to imprisonment for not less than 30 days and not exceeding 5 years or a fine of not less than $250 and not exceeding $2,500 or both." MD Code, Criminal Law, § 4-203(c)(2)(i).

24.    Subsection (b)(2) of Section 4-203 provides that Section 4-203(a) does not prohibit "the wearing, carrying, or transporting of a handgun, in compliance with any limitations imposed under § 5-307 of the Public Safety Article, by a person to whom a permit to wear, carry, or transport

12

the handgun has been issued under Title 5, Subtitle 3 of the Public Safety Article." State law prohibits only **loaded** long guns (ordinary rifles and shotguns) in or on a vehicle and expressly exempts carry permit holders from that restriction. MD Code, Natural Resources, § 10-410(c)(1). Unloaded long guns may be freely transported in a vehicle in Maryland under State law without a permit or license.

25.     State law preempts local regulation of the "wearing, carrying or transporting of handguns" (1972 Maryland Laws, Ch. 13, § 6), the "possession" of "regulated firearms" (MD Code, Public Safety, § 5-133(a)), the "transfer" of "regulated firearms" (MD Code, Public Safety, § 5-134(a)), the "sale" of "regulated firearms" (MD Code, Public Safety, § 5-104), and "the transfer of a rifle or shotgun" (MD Code, Public Safety, § 5-207(a)). These express preemption provisions apply to all local regulations that are not otherwise expressly authorized by MD Code, Criminal Law, § 4-209(b)(1). *Engage Armament*, 494 Md. at 16-17. The express preemption provisions of 1972 Maryland Laws, Ch. 13, § 6, are applicable to both loaded and unloaded handguns, the carrying of handguns, and to sales of ammunition. *Montgomery Co. v. Atlantic Guns*, 302 Md. 540 (1985).

26.     Effective in July 2022, and in compliance with the Supreme Court's June 23, 2022, decision in *Bruen*, the Maryland State Police began to issue wear and carry permits on a "shall issue" basis without regard to whether the applicant showed that he or she possessed a "good and substantial reason" previously required by Maryland State law, MD Code, Public Safety, § 5-306(a)(6)(ii). This "good and substantial reason" requirement was later expressly struck down as unconstitutional in *In re Rounds*, 255 Md. App. 205 (2022).

27.     In response to *Bruen*, the Maryland General Assembly enacted Senate Bill 1, 2023 Maryland Laws, Chapter 680, codified in part at MD Code, Criminal Law, §§ 4-111, 6-411. SB 1

13

amended MD Code, Public Safety, § 5-307, to repeal the authority of the State Police to impose "geographic area, circumstances, or times" restrictions on carry permits. SB 1 also repealed the limitation, then found in MD Code, Criminal Law, § 4-203(b)(2), that required carry permit holders to be "in compliance with any limitations imposed under § 5–307 of the Public Safety Article." SB 1 otherwise left unchanged the existing system of regulation for carry of a handgun by non-permit holders as regulated by MD Code, Criminal Law, § 4-203(a) & (b).

28.    SB 1 enacted MD Code, Criminal Law, § 6-411, which presumptively barred permit holders from entering a dwelling or any privately owned property without the prior consent of the private property owner via signage or otherwise. MD Code, Criminal Law, § 6-411(c), (d). SB 1 defined "property" for these purposes as "a building" and provided that "'property' does not include the land adjacent to a building." MD Code, Criminal Law, § 6-411(a)(6).  The United States District Court for the District of Maryland promptly enjoined enforcement of Section 6-411(d), holding that this restriction was unconstitutional under *Bruen.* See *Kipke v. Moore*, 695 F.Supp. 638 (D.Md. 2023). The United States Court of Appeals for the Fourth Circuit recently affirmed that ruling in *Kipke v. Moore*, 165 F.4th 194, 218-19 (4th Cir. 2026), on grounds that "Maryland's rule would effectively declare most public places 'gun-free zones'" and that result "likely stretches the sensitive places doctrine too far."

29.    SB 1 also imposed firearms restrictions in an "area for children and vulnerable individuals," in "special purpose" areas, and in "government or public infrastructure" areas. MD Code, Criminal Law, §§ 4-111(a)(2), (a)(4), (a)(8). Unlike Chapter 57, SB 1 did not create 100-yard buffer zones or ban all firearms at privately owned parks, libraries, places of worship, recreational facilities, or at "all property associated with the place, such as a parking lot or grounds of a building."

14

For example, SB 1 defined "government or public infrastructure area" as extending to "a building or any part of a building owned or leased by a unit of State or local government" or "a building of a public or private institution of higher education, as defined in § 10-101 of the Education Article." MD Code, Criminal Law, § 4-111(a)(4)(i)(ii). SB 1 expressly preserved the right of a private owner to possess firearms in all of these private property locations. MD Code, Criminal Law, § 4-111(b)(9)(i) (providing that Section 4-111 "does not apply to *** a location that is not owned by, leased by, or otherwise under the control of the State or a political subdivision of the State: (i) the owner or lessee of the location"); § 4-611 (providing that the ban on the "wearing, carrying, or transporting a firearm may not enter or trespass in the dwelling of another" does not apply where the owner has "given permission" or where the wearing, carrying or transporting of firearm on real property is by "(i) the holder of the easement, right-of-way, servitude, or other property interest; or (ii) a guest or assignee of the holder of the easement, right-of-way, servitude, or other property interest").

30.     SB 1 enacted MD Code, Criminal Law, §§ 4-111(b)(9)(ii), which provides that an owner (or lessee) may also have an "express agreement" with permit holders to carry handguns (and with any adult with respect to long guns) in all privately owned sensitive areas regulated by SB 1. That includes private preschools, restaurants serving alcohol, pre-kindergartens, private schools, private higher education institutions, stadiums, museums, amusement parks, racetracks, video lottery facilities, and the four specific types of private health care facilities specifically cross-referenced by subsection 4-411(a)(2)(iii). These provisions permit owners of privately owned locations, including places of worship, to use permit holders and others for armed security. SB 1

15

enacted a *mens rea* requirement in Section 4-111(f) and Section 6-411(e), punishing only a "person who willfully violates" its provisions.

31.    The 2023 General Assembly also enacted House Bill 824, 2023 Maryland Laws, Ch. 651, which repealed the requirement of "a good and substantial reason" for a carry permit, the provision abrogated by *Bruen*.

**THE SECOND AMENDMENT**

32.    The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment is applicable to the States as incorporated through the Due Process Clause of the Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago,* 561 U.S. 742, 778 (2010). "[T]he Second Amendment embodies a uniform national standard" that is equally applicable to the States and the federal government. *Wolford v. Lopez*, No. 24–1046, 609 U.S. ---, ---- S.Ct. ----, 2026 WL 1825723 at *5 (U.S. June 25, 2026). "The right protected by the Second Amendment is entitled to no less protection than other constitutional rights." *Id*. at *11 n.13.

33.    *Bruen* holds that the Second Amendment right to bear arms means "a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense." 597 U.S. at 33 n.8. *Wolford* applied *Bruen* to hold that **"the Second Amendment protects the right of Americans to carry arms for self-defense as they go about their daily lives."** 2026 WL 1825723 at *4 (internal punctuation omitted) (emphasis added). The Second Amendment thus "presumptively guarantees" an individual's "right to 'bear' arms in public for self-defense." *Bruen*, 597 U.S. at 33. "[T]he standard for applying the Second Amendment is as

16

follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. Under this test, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 597 U.S. at 19. Thus, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 17.

34.    *Wolford* holds that the textual inquiry at Step One of *Bruen* is determined by whether "the law place[s] any restrictions on either the 'keep[ing]' (i.e., possession) or the 'bear[ing]' (i.e., carrying) of arms." *Wolford,* 2026 WL 1825723 at *6*., quoting *Bruen*, 597 U.S. at 32-33. "[H]istorical materials and precedents" "are out of place at Bruen's first step." *Wolford,* 2026 WL 1825723 at *10. Rather, "the question is simply whether a challenged law falls within the Second Amendment's 'plain text.'" *Id*., quoting *Bruen*, 597 U. S. at 24. A court may not "smuggle additional limits, drawn from our regulatory tradition into the plain-text stage of the inquiry." *Id.* at *14 n.1 (Barrett, J., concurring).

35.    In *Wolford*, the Supreme Court reaffirmed *Bruen*'s holding that "the Second and Fourteenth Amendments protect the right to carry handguns outside the home for self-defense," and struck down Hawaii's ban on firearms on private property held open to the public unless the private property owner consented, either by signage or otherwise. 2026 WL 1825723 at *3. The Court

17

reasoned that "[t]he effect of this new rule is to impose severe restrictions on the daily activities of residents" because the law barred residents "from entering many places that people routinely visit in the course of their daily routines, such as gas stations, convenience stores, restaurants, coffee shops, drug stores, grocery stores, 'big box' stores, home improvement stores, barber shops or hair salons, dry cleaners, and laundromats." *Id. Wolford* thus confirms the Fourth Circuit's holding in *Kipke* that the presumptive ban of firearms in or on private property open to the public, as imposed by MD Code, Criminal Law, § 6-411(d), is unconstitutional. *Wolford,* 2026 WL 1825723 at *7 (citing Section 6-411(d) as imposing the same ban as Hawaii).

36.     The Supreme Court has, several times, pointed to historical regulations on the right to keep and bear arms in discrete locations that it has called "sensitive place[]" laws. See *District of Columbia v. Heller,* 554 U.S. 570, 626 (2008); *McDonald v. City of Chicago,* 561 U.S. 742, 786 (2010); *Bruen,* 597 U.S. at 30–31; *Wolford,* 2026 WL 1825723 at *5. *Bruen* pointed to historical restrictions on carrying in "legislative assemblies, polling places, and courthouses," and "assume[d] it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment" at the Founding. *Bruen,* 597 U.S. at 30. The *Bruen* Court made clear that the government may not ban firearms in crowded places because any such rule would "eviscerate" the general right to public carry arms for self-defense. *Id.* at 31.

## PARTIES

**Plaintiffs:**

37.     Plaintiff JULIO BARRETO, Jr., is a Montgomery County resident, residing at 9811 Cahart Pl, Silver Spring, MD 20903. He possesses a Maryland wear and carry permit as issued by the Maryland State Police. In his daily life, he travels throughout Montgomery County while armed

18

and, while doing so on foot, he frequently comes within 100 yards of "a place of public assembly," as that term is defined by Bill 23-26. Specifically, for the last 30 years he has obtained service for his vehicles from the Shell Service Station, which is right across the street, well within 100 yards of the Episcopal Church of Our Savior, located at 1700 Powder Mill Road, Silver Spring MD. He frequently takes his grandchildren to Martin Luther King Jr. Swim Center, 1201 Jackson Rd, Silver Spring, MD 20904. He is a member of the Board of Directors of Plaintiff Maryland Shall Issue and a member of Maryland Shall Issue. He regularly goes to the Micro Center store in Rockville and that location is within 100 yards of the parking lot of DMV Iron Gym, which is arguably a "recreational facility" open to public and thus a "place of public assembly" within meaning of Bill 23-26. He fully intends to continue these activities while carrying a loaded firearm as allowed by State law but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

38.    Plaintiff JULIO BARRETO, Jr., frequently visits downtown Silver Spring and parks in the parking garage located at 921 Wayne Avenue, Silver Spring, MD, right across the street from, and well within 100 yards of, the Brigadier General Charles E. McGee Library located at 900 Wayne Avenue. From time to time he has walked to shops, including the FedEx Office Print & Ship Center, 8501 Georgia Av., Silver Spring, Md., which are within 100 yards of the "Whale Art" park, which is located on Silver Spring campus of the National Oceanic and Atmospheric Administration, at the corner of Wayne Ave. and Georgia Ave. in Silver Spring, MD. The Whale Art park is also within 100 yards of multiple restaurants, including a Subway, the Firepan Korean BABQ and Bar, El Taco Loco, the Charm Thai Restaurant and a Massage Envy outlet. He also frequents Cold Stone Creamery, 821 Ellsworth Drive, which is within 100 yards of, the Silver Spring Civic Building at

One Veteran Place in Silver Spring, which is owned by Montgomery County, and is arguably a government building open to the public for the business of government or is a "multipurpose exhibition facility," as those terms are used by Bill 23-26. He fully intends to continue these activities while carrying a loaded firearm as allowed by State law but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

39.    Plaintiff JULIO BARRETO, Jr., also frequents the Planet Fitness, located at 11130 New Hampshire Ave, Silver Spring, MD 20901, which is arguably a "recreational facility" open to the public within the meaning of Bill 23-26. Periodically, he goes to the Target, Costco and Dick's Sporting Goods at the Wheaton Mall. The adjacent parking lot at those locations is within 100 yards of a wooded area maintained in its natural condition and thus arguably a "park" within the meaning of Bill 23-26. He frequents Optimal Physical Therapy, 1738 Elton Rd #230, Silver Spring, MD, which is within 100 yards of the Perpetual School of Nurse Asst, at 1734 Elton Rd., Silver Spring MD, which is arguably a "school" within the meaning of Bill 23-26. He regularly visits his personal physician at 20 Courthouse Square, Ste 204, Rockville, MD, which is within 100 yards of the Rockville Police Department, the Courthouse Square Park, the Montgomery County Treasury, the Montgomery County Courthouse, the Montgomery County District Court building and other government buildings open to the public in that location. He fully intends to continue these activities while carrying a loaded firearm as allowed by State law but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

40.    Plaintiff DR. HOWARD SACHS, is a physician and a Montgomery County resident, residing at 4200 Leland Street, Chevy Chase, MD 20815. He possesses a Maryland wear and carry permit as issued by the Maryland State Police and is a member of Plaintiff Maryland Shall

Issue, Inc.. In the course of his daily life, he travels throughout Montgomery County and, while on foot, frequently comes within 100 yards of "a place of public assembly," as that term is defined by Bill 23-26. Specifically, his home is within 100 yards of two areas at the intersection of Maple Street and Leland Street in Chevy Chase, and within 100 yards of an area at the intersection of Oak Street and Ridgewood Avenue in Chevy Chase. All of these areas are publicly owned and "maintained in its natural state" and are "a piece of ground in or near a city or town kept for ornament and recreation," and thus arguably constitute a "park" within the meaning of Bill 23-24. Because Section 57-11(b) provides an exception that is limited to the "home" (rather than privately owned real estate) he may not leave his home while armed, even for the purpose of getting in his vehicle. He refrains from leaving his home while armed because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

41.     Nearly every day, weather permitting, Plaintiff DR. HOWARD SACHS visits Panera café located at 7201 Wisconsin Ave., Bethesda MD, which is within 100 yards of Elm Street Urban Park. He frequently shops for groceries at the Giant Food in Bethesda, at 7142 Arlington Rd., Bethesda, MD, which is within 100 yards of Caroline Freeland Urban Park. He regularly plays tennis and sits on a bench within 100 yards of the Jane E. Lawton Leland Center in Chevy Chase. He is regularly at Kol Shalom synagogue on Darnestown Road in Rockville or B'nai Tzedek synagogue on South Glen Road in Potomac, MD. He often walks into downtown Bethesda and sits at public benches on private property adjacent to Ourisman Honda. These benches are within 100 yards of Capital Crescent Trail in Bethesda, which is a "park" within the meaning of Bill 23-26. He regularly visits a friend who lives on Glenmore Terrace in Rockville, MD, whose home is well within 100 yards of the back fence of a synagogue, Kol Shalom. He refrains from visiting these locations while

armed because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

42.    Plaintiff MATTHEW EDWARD MOORE is a resident of Montgomery County, residing at 17809 Teri Dr., Derwood MD, 20855. He is a member of Plaintiff Maryland Shall Issue and possesses a wear and carry permit issued by the Maryland State Police. He is a member of Central Baptist Church located at 7271 Muncaster Mill Rd., Rockville MD. When attending services and activities at the Church, and with the knowledge and express permission of Church leadership, he carries his firearm for personal protection and the protection of the members of the Church. The bans enacted by Bill 23-26 forces him to choose between his First Amendment right to worship and his Second Amendment right to carry a firearm in public for self-defense. He is regularly armed while at church and fully intends to continue these activities while carrying a loaded firearm, as allowed by State law, but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

43.    Plaintiff MATTHEW EDWARD MOORE also regularly transports his young son to speech therapy located at Coconut & Palm Pediatrics located at 362A Christopher Ave., Gaithersburg MD, a location within 100 yards of **two** places of worship, Light of the World Ministry located at 354 Christopher Ave., Gaithersburg, MD, and Montgomery Faith Fellowship located at 356A Christopher Ave., Gaithersburg, MD. He regularly shops at a Giant Food grocery store at 18250 Flower Hill Way, Gaithersburg, MD, which is within 100 yards of the grounds and associated parking lot of Emory Grove Optimal Learning Center located at 18100 Washington Grove Lane, Gaithersburg, MD which is arguably a "school" within the meaning of Bill 23-26. He is regularly armed while going about all these activities and fully intends to continue these activities while

carrying a loaded firearm, as allowed by State law, but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

44.    Plaintiff MATTHEW EDWARD MOORE also frequents a Giant Food grocery store parking lot at 16837 Crabbs Branch Way, Derwood, MD, and a McDonalds restaurant at 16701 Crabbs Branch Way, Rockville, MD, both of which are within 100 yards of the parking lot of Shadygrove Road KinderCare at 16723 Crabbs Branchy Way, Rockville, MD, which is arguably a "school" within the meaning of Bill 23-26. He frequents Harbor Freight Tools located at 9649 Lost Knife Rd Gaithersburg, MD 20877, which is within 100 yards of the grounds of South Lake Elementary School located at 18201 Contour Rd, Gaithersburg, MD. He frequents Potbelly Sandwich Shop, at 544 N Frederick Ave., Gaithersburg, MD, and the Ross Dress for Less, at 480 N Frederick Ave., Gaithersburg, MD , both of which are within 100 yards of the parking lot of the Montgomery County Fair Grounds located on Perry Pkwy, Gaithersburg, MD. He is regularly armed while going about all these activities and fully intends to continue these activities while carrying a loaded firearm, as allowed by State law, but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

45.    Plaintiff MATTHEW EDWARD MOORE regularly takes his children to their pediatrician at Complete Care for Kids at 12850 Middlebrook Road Ste., 200 Germantown, MD, which is within 100 yards of the grounds of the Seneca Valley High School at 19401 Crystal Rock Dr. Germantown, MD. He frequents Regal Rockville Center movie theater at 199 E. Montgomery Ave., Rockville, MD, which is within 100 yards of the Montgomery County Circuit Court courthouse, at 50 Maryland Ave., Rockville, MD, the Montgomery County Executive Office Building, at 101 Monroe St. Rockville, MD, and the grounds of the Montgomery County District

Court, at 27 Courthouse Sq. Rockville, MD. He is regularly armed while going about all these activities and fully intends to continue these activities while carrying a loaded firearm, as allowed by State law, but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

46. Plaintiff ALAN DUNCAN is a resident of Queen Anne's County, residing at 22719 Squire Ln., Queen Anne, MD 21657. He is a member of Plaintiff Maryland Shall Issue and currently has a wear and carry permit issued by the Maryland State Police. He regularly visits Sugar Loaf Mountain in Montgomery County and that location is a privately owned park open to the public and thus a place of public assembly under Bill 23-26. He also regularly dines at Laurienzo Brick Oven Café, 1896 Urbana Pike, Hyattstown, MD, the parking lot of which is within 100 yards of the Hyattstown United Methodist Church. He also regularly shops at the Harris Teeter grocery store at 22700 Sweetshrub Drive, Clarksburg, MD, which is within 100 yards of the Little Seneca Creek Park. He is regularly armed while engaged in all these activities and fully intends to continue these activities while carrying a loaded firearm as allowed by State law but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

47. Plaintiff ALAN DUNCAN also regularly shops at Clarksburg Premium Outlets, 22705 Clarksburg Rd, Clarksburg, MD, a large segment of which fails within 100 yards of a large, wooded area which is "maintained in its natural state" and thus arguably a "park" as that term is used in Bill 23-26. He is a regular visitor of Little Bennett Regional County Park on Frederick Road in Montgomery County. He also regularly visits multiple areas within Rockville, MD, which are within 100 yards of County courthouses and County parks, including Courthouse Square Park. He is regularly armed as permitted State law while engaged in all these activities and fully intends to

24

continue these activities while carrying a loaded firearm as allowed by State law but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

48.    Plaintiff ARTHUR SCOTT THACHER is a resident of Carroll County, MD, residing at 355 John Owings Rd, Westminster, MD 21158. He is a member of Plaintiff Maryland Shall Issue and currently has a wear and carry permit issued by the Maryland State Police. He regularly commutes to his place of employment at 7609 Airpark Road, Gaithersburg, MD. That location shares the parking lot with Christ Worship Center International, at 7601 Airpark Rd Unit C, Gaithersburg, MD, which is within 100 yards of his place of employment. A portion of the parking lot for that location is also within 100 yards of the Inter-Denominational Church of God on Woodfield Road. He regularly walks along Woodfield Road to a McDonalds restaurant within 100 yards of that church. He regularly visits the Damascus Outdoor Guns & Gear shop located at 9861 Main St, Damascus, MD, where he often parks while conducting such visits is within 100 yards of the grounds of the Damacus library. He regularly dines at the Hornets' Nest Grille, at 9876 Main St, Damascus, MD, which is within 100 yards of the grounds and parking lot of Lagoinha Washington Church, at 9840 Main St, Damascus, MD. He is regularly armed while engaged in all these activities and fully intends to continue these activities while carrying a loaded firearm as allowed by State law but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

49.    Plaintiff ARTHUR SCOTT THACHER is an electrician by trade, and he regularly purchases material from City Electric Supply shop at 18620 Woodfield Rd. Ste. A, Gaithersburg, MD, which is within 100 yards of Iglesia Pentecostal a Dios Sea la Gloria, at 18630 Woodfield Rd,

25

Gaithersburg, MD. He also regularly frequents Capital Electric, an electrical supply store, at 15886 Gaither Dr. Ste. A, Gaithersburg, MD, which is within 100 yards of the Sky Zone Trampoline Park, at 15813 Gaither Dr., Gaithersburg, MD, which is arguably a "recreational facility" within the meaning of Bill 23-26. He often eats at the Pot Belly restaurant, 544 N Frederick Ave, Gaithersburg, MD, which is within 100 yards of the parking lot of the Montgomery County Fairgrounds. He often has lunch at the Gentlemen Jim's Restaurant, at 18257 Flower Hill Way, Gaithersburg, MD, which is within 100 yards of the TopHat Early Learning school. On occasion, he gets pizza and wings for lunch from Ledos Pizza, at 7213 Muncaster Mill Rd, Derwood, MD, which is immediately adjacent to the Maryland State Inspection facility and within 100 yards of the Holy Ground Christian Center. The Inspection facility is open to visitors and is thus a government building open to the public for the business of government within the meaning of Bill 23-26. He is regularly armed, as allowed by State law, while engaged in all these activities and fully intends to continue these activities while carrying a loaded firearm as allowed by State law but will refrain from doing so because he fears prosecution under Chapter 57 of the County Code, as amended by Bill 23-26.

50.     Plaintiff MARYLAND SHALL ISSUE, INC. ("MSI") is a Maryland corporation, located at 9613 Harford Rd., Ste C #1015, Baltimore, MD 21234-2150. MSI is an Internal Revenue Service certified Section 501(c)(4), non-profit, non-partisan, all-volunteer membership organization with approximately 2100 members statewide. MSI is dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. The purposes of MSI include promoting the exercise of the right to keep and bear arms and

26

education, research, and legal action associated with the constitutional right to privately own, possess and carry firearms.

51.     MSI has one or more members who have carry permits issued by the Maryland State Police under MD Code, Public Safety, § 5-306, and who live in Montgomery County and frequently or regularly visit, while legally armed under State law, locations which are within 100 yards of a "place of public assembly" as that term is defined by Bill 23-26. The home of one member of MSI is immediately within 100 yards of a synagogue, a school and a church in Montgomery County. This member acts as a designated security member at his synagogue in the County. Another member of MSI, who also has a carry permit, is armed at his synagogue at Chabad of Potomac, 11621 Seven Locks Rd., Potomac, MD, at the specific request of his rabbi. On the Sabbath this member walks to his synagogue and passes within 100 yards of St James Episcopal Church, 11815 Seven Locks Rd., Potomac, MD. Another member of MSI lives near Brookeville, MD, within Montgomery County, and his home is within 100 yards of the Rachel Carson Conservation Park near Olney. This individual regularly visits shops located within 100 yards of a privately owned "Butterfly Park" located at the center of Olney at 3233 Spartan Rd., Olney, MD. This private park is within 100 yards of an apartment complex, a Safeway grocery store and its underground parking garage, a Western Union outlet, a bank, a gas station, a salon, a private gym, a CVS pharmacy, several restaurants, including a Papa Johns Pizza, an ice cream shop, and a Buffalo Wild Wings, and an ATM. These and other members of MSI with carry permits are regularly armed, as allowed by State law, as they go about their daily activities in Montgomery County. But for the enactment of Bill 23-26 and the threat of prosecution by the County of Bill 23-26, these members of MSI would continue to visit

27

such locations while legally armed and intend to do so in the future. Such MSI members fear prosecution under Chapter 57 if they should do so.

52. MSI has members who live outside of Montgomery County, but who travel to or work within Montgomery County. These MSI members regularly exit their vehicles while armed as allowed by State law and go on foot to specific locations within Montgomery County within 100 yards of "a place of public assembly," as that term is used in Bill 23-26. Each of these members has a wear and carry permit. Plaintiff Alan Duncan and Plaintiff Arthur Scott Thacher are among these members. Another member of MSI, who is a resident of Frederick County, has a wear and carry permit and is armed while employed at office space on Courthouse Square in Rockville, well within 100 yards of County courthouses and the Courthouse Square Park. Still another member lives in Carroll County, and regularly visits his brother on North Park Ave, Chevy Chase, MD, within 100 yards of Hubert Humphrey Park at 4433 S. Park Ave., Friendship Heights, MD. This member also visits his daughter who lives on Hickory Forest Way, within 100 yards of the North Germantown Greenway Stream Valley Park. These and other members of MSI who live outside of Montgomery County, and who have carry permits, are regularly armed as they exit their vehicles and go to these and other activities in Montgomery County, as allowed by State law. But for the enactment of Bill 23-26 and the threat of prosecution by the County of Bill 23-26, these members of MSI would continue to visit such locations in the County while legally armed and intend to do so in the future. Such MSI members fear prosecution under Chapter 57, as amended by Bill 23-26, if they should do so.

53. MSI has one or more members who live outside of Montgomery County and do not possess a Maryland wear and carry permit, but who nonetheless possess and transport unloaded

28

handguns and long guns as well as ammunition inside of Montgomery County and do so in accordance with State law. But for the threat of prosecution by the County of Chapter 57, these members of MSI would continue to travel in Montgomery while transporting unloaded firearms and ammunition and intend to do so in the future. Such MSI members fear prosecution under Section 57-10 of Chapter 57, as amended by Bill 23-26, if they should do so.

54.    MSI's President and counsel filed extensive comments with Montgomery County and objections to Bill 23-26 prior to its enactment. A true and correct copy of those comments is included in the June 10, 2026, Staff Memorandum to Bill 23-26. That Staff Memorandum is attached as Exhibit D. The MSI President and counsel also presented oral testimony to the Montgomery County Council on June 9, 2026, in opposition to Bill 23-26 on behalf of MSI and its members. As a participant in this legislative process, MSI has represented the interests of its members in the subject matter addressed by Chapter 57.

55.    Chapter 57 burdens the ability of MSI members to keep and bear arms within Montgomery County. These MSI members have standing to challenge Chapter 57. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) (Where "the plaintiff is himself an object of the action *** there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."). MSI has representational standing to sue on behalf its members who live in Montgomery County and/or who travel through Montgomery County or who otherwise are injured by the County's unlawful actions. *Hunt v. Washington State Apple Advert. Com'n.,* 432 U.S. 333, 342 (1977).

56.    Each of MSI's members who possess or transports firearms in Montgomery County is injured by Section 57-10 and Section 57-11(a) of Chapter 57. MSI has at least one such member

who resides outside of Montgomery County but travels to and conducts lawful activities outside of a vehicle in the County while lawfully armed under State law. MSI has at least one such member who is a resident of Montgomery County and who travels in and conducts lawful activities outside of a vehicle in the County while lawfully armed under State law. MSI has at least one such member who resides outside of Montgomery County who does not have a wear and carry permit but who travels within the County while possessing and transporting firearms lawfully under State law. The interests that MSI seeks to protect are germane to MSI's purpose and neither the claims asserted herein nor the relief requested require the participation of MSI's individual members. See *Retail Industry Leaders Ass'n. v. Fielder,* 475 F.3d 180, 186 (4th Cir. 2007).

57. Each of the Plaintiffs is entitled to bring a pre-enforcement challenge to Chapter 57. In order to show injury in a pre-enforcement challenge, Plaintiffs need only show "'an intention to engage in a course of conduct arguably affected with a constitutional interest.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014), quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). See also *FEC v. Cruz*, 596 U.S. 289, 300 (2022); *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,* 588 U.S. 1, 16 (2019) (Kavanaugh, J., concurring) (noting that plaintiffs may bring "both facial, pre-enforcement challenges and as-applied challenges to agency action"). The allegations of each of the Plaintiffs satisfy these requirements.

58. The individual Plaintiffs have engaged in constitutionally protected conduct in the past that would now violate Chapter 57, as amended by Bill 23-26, and the Plaintiffs intend to engage in such conduct in the future but will refrain from doing so because they reasonably fear prosecution under Chapter 57 if they do so. Nothing "requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Susan B. Anthony*, 573

U.S. at 163. See also *Cruz,* 5966 U.S. at 300-01; *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 129 (2007); *Free Enter. Fund. v. Pub.Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010). Plaintiffs are not required "to risk criminal prosecution to determine the proper scope of regulation." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Maryland law provides that a plaintiff need only have "an interest such that he or she is personally and specifically affected in a way different from the public generally" to bring a pre-enforcement action. *Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 343-44, 235 A.3d 873 (2020) (collecting cases).

59.    "[I]n numerous pre-enforcement cases," the Supreme Court "did not place the burden on the plaintiff to show an intent by the government to enforce the law against it," but rather the Court "presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013). See *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010); *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *Babbitt*, 442 U.S. at 301. The County in this case has not disavowed full enforcement of Chapter 57, and there is no reason to believe that the County will not fully and vigorously fully enforce Chapter 57 at its time and place of choosing. Under the forgoing principles, the individual Plaintiffs and MSI, on behalf of its members, all have standing to seek pre-enforcement review of Chapter 57.

**Defendant:**

60.    The Defendant is Montgomery County, Maryland, with its principal place of business and county seat located in Rockville, Maryland. Montgomery County is a "person" for purposes of the relief sought by this suit within the meaning of MD Code, Courts and Judicial Proceedings, § 3-401, and 42 U.S.C. § 1983. Chapter 57, as amended by Bill 23-26. For purposes

31

of Section 1983, the actions challenged herein are official actions and policies of the County, as reflected in the enactment of County ordinances. The County may be named and sued *eo nomine* under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Starbuck v. Williamsburg James City County School Board,* 28 F.4th 529, 533-34 (4th Cir. 2022); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

## COUNT I

## MARYLAND CONSTITUTION – ARTICLE XI-A

61.    The Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint.

62.    As of April 2025, there were more than 200,000 people who possessed a Maryland wear and carry permit, with Baltimore County residents having the most permits at 29,214 permits and Prince George's County residents coming in second with 25,770 permits. https://perma.cc/T272-NA8G. As of that time, just 1% of Montgomery County's 1.1 million residents, or 11,173 people, had carry permits. *Id.* Between November 16, 2024, and November 15, 2025, the Maryland State Police issued a total of 98,154 wear and carry permits, of which 15,055 permits were issued to Baltimore County residents while only 6,504 permits were issued to residents of Montgomery County. See MARYLAND STATE POLICE - LICENSING DIVISION, 2025 HANDGUN PERMIT REPORT EXECUTIVE SUMMARY CHART, attached as Exhibit E.[1]

---

[1] The Court may take judicial notice of this Report under Rule 201 of the Federal Rules of Evidence, as it is an official report issued by the Maryland State Police as required by MD Code,

32

Permits issued to residents of nearby counties during this 12-month period vastly outnumbered the 6,504 permits issued to Montgomery County residents. Specifically, in this 12-month period, 13,138 permits were issued to residents of Prince George's County, 10,967 permits were issued to residents of Anne Arundel County, 4,917 permits were issued to Frederick County residents, and 3,366 permits were issued to Howard County residents for a total of 32,388 permits just in these four neighboring counties. *Id.*

63.    Under Article XI-A, § 3, "if an 'ordinance enacted by a charter county does not constitute a 'local law' within the meaning of Article XI-A, it is beyond the authority of a charter county and, therefore, is unconstitutional.'" *Assanah-Carroll v. Law Offices of Edward J. Maher, PC.*, 480 Md. 394, 424-25 (2022), quoting *Montgomery Cty. v. Broadcast Equities, Inc.*, 360 Md. 438, 441 n.1 (2000). A general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Assanah-Carroll*, 480 Md. at 425. "Where a charter county attempts to enact an ordinance on 'matters of significant interest to the entire state,' [this Court has] determined that it is not, in fact, 'a local law' under Article XI-A." *Engage Armament*, 494 Md at 26, quoting *Assanah-Carroll,* 480 Md. at 25. A "local law deals with 'some matter of governmental administration peculiarly local in character in which persons outside of that locality have no direct interest.'" *Tyma v. Montgomery County,* 369 Md. 497, 507 n.7 (2002), quoting *Norris v. Mayor and*

Public Safety, § 5-312, and the information contained therein is "not subject to reasonable dispute." Plaintiffs request that the Court take judicial notice of this document.

33

*City Council of Baltimore*, 172 Md. 667, 680 (1937). "[A] local law applies to only one subdivision" and "pertains only to a subject of local import.'" *Engage Armament,* 494 Md. at 25, quoting *Tyma,* 369 Md. at 507. See also *Cole*, 249 Md. at 433 (the "subject matter" of a local law "is exclusively local").

64.     Under Section 6 of Article XI-A of the Maryland Constitution, the home rule powers conferred on the County by Article XI-A "shall not be construed to authorize the exercise of any powers in excess of those conferred by the Legislature upon said Counties or City as this Article sets forth." "Even an act of the General Assembly cannot validly authorize a county to pass a general law." *Engage Armament*, 494 Md. at 25. MD Code, Criminal Law, § 4-209(b)(1) thus does not authorize the County to enact a general law. Montgomery County is thus not authorized to enact a "general law."

65.     Section 57-11(a) of Chapter 57 provides: "In or within 100 yards of a place of public assembly, a person must not: (1) sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms." Section 57-11(b)(6), of Chapter 57, as amended by Bill 23-26, provides that Section 57-11(a) "does not *** apply to the possession of a handgun by a person who has a permit to carry the handgun under State law **while the person travels on public highways within 100 yards of a place of public assembly**." (Emphasis added). As thus limited by Section 57-11(b)(6), Section 57-11(a) **would** apply to any permit holder who is **not** "travel[ing] on public highways within 100 yards of a place of public assembly," and thus **would apply** to permit holders who are walking or on foot on or near a public sidewalk at or within 100 yards of "a place of public assembly" as defined by Bill 23-26.

66.    *Engage Armament* holds that Section 57-11(a), as then amended by Bill 4-21 and Bill 21-22, was "not a local law because of its application to holders of State-issued wear-and-carry permits traveling on public highways who cross within 100 yards of a place of public assembly." 494 Md. at 28. In so holding, *Engage Armament* stated:

> Our holding that § 57-11(a) is not a local law because it reaches non-Montgomery County residents traveling within the County on public highways **should not be interpreted** as a determination that an exception for travel on public highways would alone remedy the problem and transform § 57-11(a) into a local law. Any determination of whether an amended § 57-11(a) is a local law will depend on the scope of the amended law and evidence concerning its effects.

494 Md. at 28 note 23. (Emphasis added).

67.    The attempt by Montgomery County to limit *Engage Armament* to permit holders who are traveling on the public highways fails because the scope of Section 57-11a) likewise "burden[s] permit holders, including the many who reside outside the County" who drive into Montgomery County **and exit their vehicles.** These individuals face the same "choice of significant travel restrictions or regularly yielding their benefits as permit holders." *Engage Armament,* 494 Md. at 28. The "scope" of Bill 23-26, *Engage Armament*, 494 Md. at 28 note 23, extends to every permit holder who drives into the County and gets out of his or her vehicle. Given "the County's lengthy and complex highway system" which "carries large volumes of traffic coming from or going to the seven jurisdictions directly bordering the County," Chapter 57 "imposes a burden on travel 'of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.'" *Engage Armament*, 494 Md. at 28 (citation omitted). Chapter 57, as amended by Bill 23-26, thus "'substantially affects persons and entities outside of' the county" and is thus "not a local law" within the meaning of Article XI-A of the Maryland

35

Constitution. *Engage Armament,* 494 Md. at 26, quoting *Holiday Universal, Inc. v. Montgomery County*, 377 Md. 305, 19 (2003).

68.    *Engage Armament* invalidated Chapter 57, as then amended by Bill 4-21 and Bill 21-22, as a general law because "[i]n effect, the County's regulation creates pockets of roadway throughout the County's lengthy and complex highway system in which travelers with State-issued wear-and-carry permits are banned from carrying firearms based on the proximity of those segments of roadway to buildings or locations that might not abut or even be visible from the road." *Engage Armament,* 494 Md. at 28. Bill 23-26, "in effect," likewise creates thousands of "pockets" of prohibited 100-yard zones "throughout the County" in which permit holders "are banned from carrying firearms based on the proximity of those segments of roadway to buildings or locations that might not abut or even be visible from the road." *Id.* The same point applies equally to a walking person who may not even be aware of the prohibited 100-yard zone prior to entering it. For this reason alone, Bill 23-26 is "not a local law" within the meaning of Article XI-A of the Maryland Constitution. *Engage Armament*, 494 Md. at 26.

69.    The "evidence concerning its effects," *Engage Armament*, 494 Md. at 28 n.23, of Bill 23-26 is self-evident. Bill 23-26 creates thousands of pockets of 100-yard gun free zones that directly and potentially affect more than 200,000 permit holders the moment they stop and get out of their vehicles inside the County. That effect applies to 32,388 permit holders in nearby counties who were issued permits between November 16, 2024, and November 15, 2025. Such permit holders in nearby counties are especially likely to move around on foot in Montgomery County in the course of their daily lives. None of these permits have expired. MD Code, Public Safety, § 5-309 (establishing permit validity for two years for initial permit and three years for subsequent

36

renewals). Bill 23-26 therefore regulates "matters of significant interest to the entire state" and is thus a "general law" under Article XI-A of the Maryland Constitution. *Engage Armament*, 494 Md. at 26. See also *Holiday Universal*, 377 Md. at 315; *Cole,* 249 Md. at 434 (same). For this reason alone, Bill 23-26 is "not a local law" within the meaning of Article XI-A of the Maryland Constitution. *Engage Armament*, 494 Md. at 26.

70.    Chapter 57's definition of a "place of public assembly," as incorporated into the bans imposed by Section 57-11(a) of Chapter 57, makes it impracticable for any of these 200,000 permit holders to legally carry a loaded firearm on foot within much of Montgomery County because it would be impracticable for a person with a wear and carry permit to walk or patronize thousands of locations otherwise open to the public located throughout the urban and rural portions of Montgomery County without passing within 100 yards of the places at which possession and transport of a firearm is now banned by Chapter 57. For this reason alone, Chapter 57 is "not a local law" within the meaning of Article XI-A of the Maryland Constitution. *Engage Armament*, 494 Md. at 26.

71.    In contrast to the *mens rea* provisions of SB 1, Chapter 57 imposes no *mens rea* requirement, and thus any possession or transport of a firearm within such areas would create strict criminal liability for permit holders and others without regard to the person's knowledge, intent or state of mind. The *in terrorem* effect intentionally created by Chapter 57 for inadvertent violations of this strict liability statute effectively acts to preclude carry by permit holders in the County. All of these permit holders are impermissibly faced "with the choice of significant travel restrictions or regularly yielding their benefits as permit holders." *Engage Armament*, 494 Md. at 28. Bill 23-26

regulates "matters of significant interest to the entire state" and is thus a general law under Article XI-A of the Maryland Constitution. *Engage Armament*, 494 Md. at 26.

72.    Allowing county governments to expand their regulatory powers in the manner accomplished by Chapter 57 will create a nightmarish web of local laws that could vary from county to county, from city to city, and from town to town, all of which could impose criminal penalties of the sort imposed by Montgomery County under Chapter 57. This reality directly and adversely affects the rights of non-residents of Montgomery County "to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261 (1936). Accordingly, in so far as Bill 23-26 limits the exception from the regulatory burdens otherwise imposed by Section 57-11(a) to permit holders who are traveling on public highways, it is not a local law and is thus unconstitutional under Article XI-A of the Maryland Constitution.

73.    Each of the  Plaintiffs and members of MSI have been harmed and is imminently threatened with future harm by the prospect of enforcement of Section 57-11. The Plaintiffs and at least one other member of MSI have engaged and intends to engage in conduct regulated by Section 57-11(a) but will not do so because of the fear of prosecution under Chapter 57. Each of the Plaintiffs has been harmed and is imminently threatened with future harm by the prospect of enforcement of Section 57-11(a).

38

**COUNT II –EXPRESS PREEMPTION – SECTION 57-10 OF CHAPTER 57 OF THE MONTGOMERY COUNTY CODE**

74.    Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint.

75.    MD Code, Criminal Law, § 4-209(a), expressly preempts all local regulation of the "purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation" of all firearms, but makes an exception to this express preemption under MD Code, Criminal Law, § 4-209(b)(1)(iii) to allow the County to regulate such matters "'within 100 yards of or in a park, church, school, public building, and other place of public assembly.'" *Engage Armament,* 494 MD at 13. **"Any local firearm regulation that does not fit within the scope of that authorization is expressly preempted by, among other provisions, § 4-209(a)."** *Id.* (emphasis added). Section 57-10 of the County Code is not limited to regulations "within 100 yards of or in a park, church, school, public building, and other place of public assembly" but rather is, on its face, applicable County wide. Accordingly, Section 57-10 is expressly preempted by Section 4-209(a).

76.    Because the regulation imposed by Section 57-10 is County-wide it is not authorized by MD Code, Criminal Law, § 4-209(b)(1)(iii), or any other provision of Section 4-209(b). See *Engage Armament,* 494 MD at 13 ("the General Assembly's intent was for the later enacted and more specific § 4-209(b)(1) to prevail over the earlier-enacted and more general preemption provisions, thus permitting local regulation of firearms **in the three specific areas set forth in § 4-209(b)(1)**"). (Emphasis added). Accordingly, Section 57-10 is also subject to and preempted by other express preemption provisions of State law, including the express preemption of local regulation regarding the "wearing, carrying or transporting of handguns," as imposed by 1972

Maryland Laws, Ch. 13, § 6, and the express preemption of local regulation of the "possession" of "regulated firearms" imposed by MD Code, Public Safety, § 5-133(a).

77. Each of the individual Plaintiffs and at least one member of MSI has engaged and intends to engage in conduct regulated by Section 57-10 but will not do so because of the fear of prosecution under Chapter 57. Each of the Plaintiffs has been harmed and is imminently threatened with future harm by the prospect of enforcement of Section 57-10.

## COUNT III – SECOND AMENDMENT, UNITED STATES CONSTITUTION

### Violations of the Second Amendment Right to Armed Self-Defense in Public

78. Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint. This Count addresses violations of the Second Amendment to the United States Constitution and is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, defendant Montgomery County has acted under "color of state law" within the meaning of Section 1983 in enacting Chapter 57.

79. "The Second Amendment protects[] the right of Americans to carry arms for self-defense as they go about their daily lives." *Wolford,* 2026 WL 1825723 at *4. There is no "well-established and representative historical analogue," *Bruen,* 597 U.S. at 30, that permits a government to so restrict the right to carry arms in public that would deprive Americans of their constitutional right "to carry arms for self-defense as they go about their daily lives." *Wolford,* 2026 WL 1825723 at *4.

80. Section 57-10 and Section 57-11(a) of Chapter 57 deprive Plaintiffs of that Second Amendment right. The County will therefore be unable to carry its burden of establishing a "well-established and representative historical analogue" that such a law is constitutional. Through

Chapter 57, the County has enacted a legal scheme that effectively "den[ies] ordinary citizens their right to public carry." *Bruen*, 142 S.Ct. at 2138 n.9. Chapter 57 is therefore unconstitutional under the Second Amendment.

81.    There is no "well-established, representative historical analogue" for Chapter 57's bans on the possession or transport of firearms at a privately owned park; place of worship; library; recreational facility; multipurpose exhibition facility, such as a fairgrounds or conference center; or for "all property associated with the place, such as a parking lot or grounds of a building" for these areas. Likewise, there is no "well-established, representative historical analogue" for Section 57-11(a)'s bans imposed on the 100-yard zone around any of these locations. The County will thus be unable to carry its burden as to these locations or zones.

82.    Section 57-11(a) of Chapter 57 is **facially** unconstitutional under the Second Amendment and is unconstitutional under the Second Amendment **as applied** to the Plaintiffs and to any member of plaintiff MSI, to the extent that it purports to impose any regulatory restrictions on the possession or transport of firearms and ammunition by the owners of, or by persons with a carry permit within, a privately owned and open to the public (A) park; (B) place of worship; (C) library; (D) recreational facility; or (E) multipurpose exhibition facility, such as a fairgrounds or conference center or within the parking lot or grounds of these locations, as these terms are used in Chapter 57.

83.    Section 57-10 of Chapter 57 is **facially** unconstitutional under the Second Amendment and is unconstitutional under the Second Amendment **as applied t**o the Plaintiffs and to any member of plaintiff MSI, to the extent that it purports to impose any regulatory restrictions

41

on carry permit holders with respect to the possession or transport of firearms or ammunition County-wide.

84.    Pursuant to 42 U.S.C. § 1983,  Plaintiffs are entitled to declaratory and equitable relief, compensatory damages and nominal damages for the foregoing violations of their Second Amendment rights. *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021). Plaintiffs are likewise entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, for the foregoing violations of their rights as detailed in Counts I, II and III. See *Maher v. Gagne,* 448 U.S. 122, 132 (1980) (holding that an award of Section 1988 fees is permitted where "the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim").

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request:

A. That this Court issue a declaratory judgment that Chapter 57 is not a "local law" in so far as it seeks to restrict the rights of Plaintiffs and MSI members who have been issued a Maryland wear and carry permit and, to that extent, it is a general law and thus unconstitutional under Article XI–A of the Maryland Constitution*,* as more fully set forth in Count I, above;

B. That this Court issue a declaratory judgment that Section 57-10 of Chapter 57 facially and as applied to the Plaintiffs and MSI members violates the express preemption provisions of MD Code, Criminal Law § 4-209(a), the express preemption provisions of 1972 Maryland Laws, Ch. 13, § 6, and the express preemption provisions of MD Code, Public Safety, § 5-133(a), as more fully set forth in Count II, above;

C. That this Court issue a declaratory judgment that Chapter 57 violates the Second Amendment rights of Plaintiffs and members of MSI who have been issued a Maryland wear and

42

carry permit to the extent it imposes restrictions on the possession and transport of firearms and ammunition by the owners of, and by persons with a wear and carry permit within, a privately owned and open to the public (A) park; (B) place of worship; (C) library; (D) recreational facility; or (E) multipurpose exhibition facility, such as a fairgrounds or conference center or within the parking lot or grounds of these locations; or within 100 yards of these locations, as these terms are used in Chapter 57, as more fully set forth in Count III, above;

D. That this Court find that Plaintiffs and MSI members have been and/or will be irreparably harmed by the conduct of defendant challenged in Counts I, II, and III, and enter a preliminary and permanent injunction barring the County from enforcing Chapter 57 against Plaintiffs and other members of MSI in a manner consistent with the declaratory relief requested above;

E. That this Court award each Plaintiff and each MSI member nominal damages, as authorized and required by 42 U.S.C. § 1983;

F. That this Court award each Plaintiff and each MSI member actual damages, as authorized and required by 42 U.S.C. § 1983, as may be proved at trial;

G. That this Court award attorney's fees and costs against defendant, as authorized by 42 U.S.C. § 1988;

H. That this Court award the Plaintiffs such other and further relief as in law and justice they may be entitled to receive.

Respectfully submitted,

/s/ Mark W. Pennak

Matthew Larosiere*
6964 Houlton Cir.
Lake Worth FL 33467

Mark W. Pennak
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd, Ste C #1015

Larosieremm@gmail.com
*Bar application pending

Dated: July 27, 2026

Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar # 21033

*Counsel for Plaintiffs*