**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JULIO BARRETO, JR., *et al.* | : | |
| | : | |
| Plaintiffs, | : | Case No. 8:26-cv-02912-DKC |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, MARYLAND | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR ADMINISTRATIVE STAY, FOR A TRO, AND FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... 2

**I. INTRODUCTION** .......... 1

**II. PERTINENT FACTS AND PROCEDURAL BACKGROUND** .......... 1

A. The County's Long-Standing Law On Weapons, Including Firearms. .......... 1

B. This Court's Denial Of Injunctive Relief In Related Case, *Maryland Shall Issue, Inc. v. Montgomery County, Maryland*, Civil Action No. 8:21-1736-TDC. .......... 7

**III. APPLICABLE LAW AND ARGUMENT** .......... 8

A. Plaintiffs Are Not Likely To Succeed On The Merits Of Any Of Their Claims. .......... 9

1. Sections 57-10 and 57-11 are Local Laws. .......... 9

2. As State Law Does Not Preempt Section 57-10, Plaintiffs are Not Likely to Succeed on the Merits as to Count II. .......... 15

3. Plaintiffs are not likely to succeed on the merits of Count III that Sections 57-10 and/or 57-11 are Unconstitutional. .......... 19

a. Section 57-10 is Constitutional. .......... 20

b. Section 57-11 is Constitutional. .......... 22

B. Plaintiffs Will Not Suffer Irreparable Harm If The Court Does Not Issue A Preliminary Injunction. .......... 25

C. The Balance Of The Equities And The Public Interest Weigh In Favor Of Denying Plaintiffs' Request For A Preliminary Injunction. .......... 27

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*, 585 U.S. 579 (2018) .......... 27

*Ass'n of Cmty. Cancer Cntrs. v. Azar*, 509 F. Supp. 3d 482 (D. Md. 2020).......... 27

*Assanah-Carroll v. Law Offices of Edward J. Maher, PC.*, 281 A.3d 72 (Md. 2022) .......... 14

*District of Columbia v. Heller*, 554 U.S. 570 (2008).......... 19, 21, 22, 23

*Engage Armament v. Montgomery Cnty., Md.*, 356 A.3d 79 (Md. 2026) .......... passim

*Holiday v. Universal*, 833 A.2d 518 (Md. 2003) .......... 14

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691 (4th Cir. 1994).......... 8

*In re Rounds*, 279 A.3d 1048 (Md. App. 2022).......... 4

*JAK Productions, Inc. v. Bayer*, 616 Fed. Appx. 94 (4th Cir. 2015).......... 9

*Kipke v. Moore*, 165 F.4th 194 (4th Cir. 2026).......... 25

*LaFave v. County of Fairfax, Virginia*, 149 F.4th 476 (4th Cir. 2025) .......... 21

*Maages Auditorium v. Prince George's Cnty., Md.*, 4 F. Supp. 3d 752, 760 (D. Md. 2014), *aff'd sub nom. Maages Auditorium v. Prince George's Cnty., Maryland*, 681 Fed. Appx. 256 (4th Cir. 2017).......... 9

*Maryland Shall Issue, Inc. v. Montgomery County, Maryland*, 680 F. Supp. 3d 567 (D. Md. 2023).......... 8, 25, 26, 28

*Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1049 (2025).......... 21, 22

*Maryland v. King*, 567 U.S. 1301 (2012) .......... 27

*Mayor & Alderman of City of Annapolis v. Annapolis Waterfront Co*., 396 A.2d 1080 (Md. 1979) .......... 15

*McCrory v. Fowler*, 570 A.2d 834 (Md. 1990) .......... 14

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).......... 19

*MicroStrategy Inc. v. Motorola, Inc*., 245 F.3d 335, 339 (4th Cir. 2001) .......... 8

*Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197 (4th Cir. 2019) .......... 26

*Munaf v. Geren*, 553 U.S. 674 (2008).......... 8

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022).......... passim

*Nken v. Holder*, 556 U.S. 518 (2009) .......... 27

*Pursuing America's Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) .......... 27

*Schall v. Martin*, 467 U.S. 253 (1984).......... 28

*United States v. Hermani*, 146 S. Ct. 1677 (2026) .......... 20

*United States v. Morrison*, 429 U.S. 598 (2000) .......... 28

*United States v. Rahimi*, 602 U.S. 680 (2024) ........................................ 22, 24
*United States v. Salerno*, 481 U.S. 739 (1987) ........................................ 28
*Winter v. Nat. Res. De. Council*, 555 U.S. 7 (2008) ........................................ 8
*Winter v. NRDC, Inc.,* 555 U.S. 7, 22 (2008) ........................................ 25
*Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) ........................................ 24, 25
*Wolford v. Lopez*, 146 S. Ct. 2032 (2026) ........................................ 21, 22, 23
*Wolford v. Lopez*, No.23-16164, 2026 WL 2291925, *2 (9th Cir. Aug. 10, 2026) ................ 24, 25

**Statutes**

Md. Code Ann., Crim. Law § 4-111 ........................................ 11
Md. Code Ann., Criminal Law § 4-209 ........................................ passim
Md. Code Ann., Cts. & Jud. Proc. § 3-405 ........................................ 13
Md. Code Ann., Local Gov't § 10-206 ........................................ 17

**Rules**

Fed. R. Civ. P. 65 ........................................ 8

**Constitutional Provisions**

Md. Const. Art. XI-A ........................................ 10

Defendant, Montgomery County, Maryland (the "County"), by and through its counsel, Jeffrey M. Schwaber, Deanna L Peters and the Law Firm of Stein Sperling Bennett De Jong Driscoll PC, and Erin J. Ashbarry of the Office of the County Attorney, pursuant to Fed. R. Civ. P. 65, hereby opposes Plaintiffs' Motion for An Administrative Stay, for a TRO and for a Preliminary Injunction (ECF No. 8) (the "Motion" and its supporting "Memorandum"), and in support thereof, states as follows:

## I. INTRODUCTION

This same case, challenging this same language and asserting the same constitutional grounds for doing so was brought in this Court previously. In fact, it was brought by this same counsel, and by one of these same Plaintiffs. That case is stayed in this Court, after an injunction request was briefed, considered and entirely rejected. Now, seizing upon the fact that a new piece of legislation was properly enacted by the County in response to a recent decision of the Maryland Supreme Court, Plaintiffs try to get back in front of this Court, apparently hoping that somehow the prior foray will escape notice. The "emergency" brought before this Court again now seeks to challenge the very same language and the very same restriction that was challenged previously, and for which injunctive relief was denied by Judge Chuang. This second bite at the apple should meet the same fate as the first.

## II. PERTINENT FACTS AND PROCEDURAL BACKGROUND

### A. The County's Long-Standing Law On Weapons, Including Firearms.

The County enacted Chapter 57, "Weapons," of the County Code 45 years ago, in 1981. Bill No. 39-80, which first introduced Section 57-7 to the County Code, stated that subject to certain expressed exceptions, "It shall be unlawful for any person to have upon his person, concealed or exposed, or in a motor vehicle where it is readily available for use, any gun designed to use explosive ammunition … ." *See* Ex. 1, Bill No. 39-80. Sixteen years later, in 1997, the

County enacted Section 57-7A, prohibiting (with certain enumerated exceptions) the sale, transfer, possession, or transport of a firearm "in or within 100 yards of a place of public assembly." Ex. 2, 1997 Laws Montgomery Cnty. Ch. 14 (Bill 4-97) ("Bill 4-97"), at 5-6. Bill 4-97 defined a "place of public assembly" to include, among other places, a place of worship, a government owned park, a public library, and a government owned or operated recreational facility, as well as "all property associated with the place, such as a parking lot or grounds of a building." *Id* at 3.

Four years later, in 2001—and a full quarter century before enactment of Bill 23-26E, Section 57-7 became 57-10, and Section 57-7A became 57-11—including the very provisions that Plaintiffs now challenge. Ex. 3, 2001 Laws Montgomery Cnty. Ch. 11 (Bill 2-01) ("Bill 2-01"). Bill 2-01 maintained the prohibitions of "keeping guns on person or in vehicles" and maintained prohibitions on "firearms in or near places of public assembly", which places remained places of worship, government owned parks, public libraries, government owned or operated recreational facilities, and "all property associated with the place, such as a parking lot or grounds of a building" as places of public assembly. *See id*. at 2, 3 and 4.

In 2021, the County responded to the increasing use of "ghost guns"—homemade unserialized (and therefore untraceable) firearms, which can be easily assembled from kits or built using 3D printers by individuals without any required background check—by enacting Bill 4-21. *See* Ex. 4, Council Staff Action Packet. Bill 4-21, which became effective on July 16, 2021, added certain provisions to address the ghost gun issue. *See* Ex. 5, 2021 Laws Montgomery Cnty. Ch. 7 (Bill 4-21) ("Bill 4-21"), at 2-3. Bill 4-21 also expanded a place of public assembly to include "a place where the public may assemble, whether the place is publicly or privately available, including" among other things, parks, places of worship, schools, libraries, recreational facilities, and multipurpose exhibition facilities. *See id*. at 4-5.

On June 23, 2022, the United States Supreme Court decided *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) (hereafter "*Bruen*"). Examining a New York law, the *Bruen* Court determined that requiring a party to demonstrate "proper cause" to qualify for a handgun carry license violates the Second Amendment's right to bear arms. In so doing, the Court articulated a new test to evaluate whether governmental firearms regulations pass muster under the Second Amendment. The Court stated that the ban of firearms in "sensitive locations" is constitutionally permissible, and proceeded to identify five locations—schools, legislative assemblies, government buildings, polling places, and courthouses—as "sensitive places" where weapons may be totally prohibited. The Court left open the possibility that other locations where weapons historically were banned—or the modern counterparts of those locations—could also qualify as "sensitive places."[1]

*Bruen* led the County to enact changes to Chapter 57. Specifically, the County enacted Bill 21-22E, effective November 28, 2022, wherein it narrowed its definition of "place of public assembly" to align its definition with *Bruen*. *See* Ex. 6, 2022 Laws Montgomery Cnty. Ch. 36 (Bill 21-22) ("Bill 21-22E"). Bill 21-22E continued the existing prohibition of carrying a firearm within 100 yards of a place of public assembly, but removed a prior broad statement that a place of public assembly was a place "where the public may assemble." *See id.* at 3. The Bill also removed the statement that a place public assembly "included" locations listed; in other words, the prior list of locations of public assembly was not exhaustive. *See id*. By removing "included," Bill 21-22E thereby made its scope narrower and clearer. Pertinent to this case, Bill 21-22E continued to include parks, places of worship, schools, libraries, recreational facilities, and multipurpose exhibition facilities—as well as all property associated with the place, such as a

[1] *Bruen* will be discussed and cited in more detail below.

parking lot or grounds of a building—as places of public assembly. *See id.* at 3-4. Bill 21-22E also added several "sensitive places" that *Bruen* expressly indicated were locations where weapons could be banned without implicating the Constitution. *See id*.

Bill 21-22E also removed a previous exception that allowed a State concealed carry permit holder to carry a firearm in a place of public assembly. *See* Ex. 7, Report of Staff of Montgomery County Council, Expedited Bill 21-22 (November 10, 2022) at 2 (stating "[e]xpedited Bill 21-22 would prevent an individual from possessing a firearm within 100 yards of a place of public assembly even when the individual has a wear-and-carry permit from the State of Maryland"). Prior to *Bruen*, Maryland required a person to demonstrate "good and substantial reason" to receive a wear-and-carry gun permit. Immediately after *Bruen,* Maryland Governor Larry Hogan instructed the Maryland State Police to no longer enforce this requirement.[2] In the weeks after Governor Hogan's instruction, the number of applications for concealed carry permits received by Maryland State Police increased eleven fold.[3] *See also* Ex. 8, Racial Equity and Social Justice (RESJ) Impact Statement regarding Bill 21-22E. As concealed carry permit holders no longer would have to demonstrate any justification for a concealed carry permit, Bill 21-22E prevented a person from carrying a firearm within 100 yards of a place of public assembly even if they have a valid State concealed carry permit.

On July 27, 2026, the County enacted Expedited Bill 23-26—the Bill that Plaintiffs challenge in the above-captioned litigation. *See* Ex. 9, 2026 Laws Montgomery Cnty. Ch. 18 (Bill 23-26) ("Bill 23-26E"). Bill 23-26E further narrows the County's firearm prohibitions to ensure

---

[2] Also after *Bruen*, the Appellate Court of Maryland struck down the "good and substantial reason" requirement. *See In re Rounds*, 279 A.3d 1048 (Md. App. 2022).

[3] *See also* Fredrick Kunkle, *Supreme Court ruling sets off rush for concealed gun permits in Maryland,* The Washington Post (July 25, 2022) https://www.washingtonpost.com/dc-md-va/2022/07/15/concealed-carry-maryland-guns-hogan/.

compliance with the current landscape of federal and state law. Sections 57-10 and 57-11—the only sections that Plaintiffs challenge in their Complaint and Motion—read in pertinent part as follows:

> **57-10. Keeping guns on person or in vehicles.**
>
> It shall be unlawful for any person to have upon his person, concealed or exposed, or in a motor vehicle where it is readily available for use, any gun designed to use explosive ammunition unless:
>
> * * *
>
> (a) Lawful mission. Such person is then engaged upon a lawful mission for which it is necessary to carry a gun upon his person; or …
>
> (d) Hunting, target practice, etc. Such person is engaged in lawful hunting, drill, training or target practice on property of which he is the owner, or lessee or on property with the prior permission of the owner or lessee thereof; or
>
> (e) Going to or returning from hunting, target practice, etc. … .
>
> This Section must not be interpreted to prohibit a firearm that is carried or transported on person or in a motor vehicle, as defined under the Maryland Transportation Article, as amended, if the firearm is:
>
> (1) in a motor vehicle, locked in a container; or
>
> (2) a handgun worn, carried, or transported in compliance with any limitations imposed under Section 5-307 of the Public Safety Article of the Maryland Code, as amended, by a person to whom a permit to wear, carry, or transport the handgun has been issued under the Public Safety Article of the Maryland Code, as amended.
>
> **57-11. Firearms in or near places of public assembly.**
>
> (a) In or within 100 yards of a place of public assembly, a person must not:
>
> (1) sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, shotgun, or ammunition or major component for these firearms; or
>
> (2) sell, transfer, possess, or transport a firearm created through a 3D printing process.
>
> (b) This section does not: …
>
> (2) apply to a law enforcement officer, or a security guard licensed to carry the firearm; … or
>
> (6) apply to a firearm that is carried or transported in a motor vehicle if the firearm is:

(A) locked in a container; or

(B) a handgun worn, carried, or transported in compliance with any limitations imposed under Section 5-307 of the Public Safety Article of the Maryland Code, as amended, by a person to whom a permit to wear, carry, or transport the handgun has been issued under the Public Safety Article of the Maryland Code, as amended.

Ex. 9, Bill 23-26E at 4-6. Bill 23-26E further reduced the places of public assembly to which Section 57-11(a) applies, to state:

**57-1. Definitions.**

In this Chapter, the following words and phrases have the following meanings:

* * *

*Place of public assembly*: A "place of public assembly" is:

(1) a publicly or privately owned:

(A) park;

(B) place of worship;

(C) school;

(D) library;

(E) recreational facility; or

(F) multipurpose exhibition facility, such as a fairgrounds or conference center;

(2) government building open to the public for the business of government or community use;

(3) polling place;

(4) courthouse; or

(5) legislative assembly.

A "place of public assembly" includes all property associated with the place, such as a parking lot or grounds of a building.

Ex. 9, Bill 23-26E at 2-3. Finally, Section 3 of Bill 23-26E states, "If any provision of this Act, or any provision of Chapter 57 is found to be invalid by the final judgment of a court of competent

jurisdiction, the remaining provisions must be deemed severable and must continue in full force and effect." *Id*. at 8.

### B. This Court's Denial Of Injunctive Relief In Related Case, *Maryland Shall Issue, Inc. v. Montgomery County, Maryland*, Civil Action No. 8:21-1736-TDC.

In 2021, Plaintiff Maryland Shall Issue, Inc. ("Plaintiff MSI"), along with other plaintiffs (collectively, the "First MSI Plaintiffs"), filed a lawsuit against Montgomery County in which they challenged certain County restrictions in Bill 4-21. *Maryland Shall Issue, Inc. v. Montgomery County, Maryland*, Case No. 8:21-1736-TDC, ECF No. 7 (the "First MSI Litigation").[4] The First MSI Plaintiffs subsequently filed a First Amended Complaint, followed by a Second Amended Complaint, which they filed on November 30, 2022. Case No. 8:21-1736-TDC, ECF No. 49. While Counts I, II, and III of the Second Amended Complaint presented state law claims that were remanded to the Circuit Court for Montgomery County, Maryland (*see* Case No. 8:21-1736-TDC, ECF No. 77), this Court retained jurisdiction of Counts IV through VIII. Pertinent here, those counts challenged certain components of Bill 21-22E, including Section 57-1's definition of "place of public assembly" and Section 57-11 under the Due Process Clause of the Fourteenth Amendment (Count IV) and the Second Amendment (Count VII). Case No. 8:21-1736-TDC, ECF No. 49.

On December 6, 2022, the First MSI Plaintiffs filed their Emergency Motion for a Temporary Restraining Order and Emergency Motion for a Preliminary Injunction, seeking to enjoin enforcement of Section 57-11(a). Case No. 8:21-1736-TDC, ECF No. 54. This Court (The

[4] In their Civil Cover Sheet in this case, the current Plaintiffs identified the First MSI Litigation as a related case, described in this Court's Local Rules as follows: "If counsel for a plaintiff in a civil action believes that the action being filed and one (1) or more other civil actions or proceedings previously decided or pending in this Court (1) arise from the same or identical transactions, happenings, or events; (2) involve the identical parties or property; (3) involve the same patent or trademark; or (4) for any other reason would entail substantial duplication of labor if heard by different judges, counsel shall indicate that fact by designating the case as a "related case" on the civil cover sheet." Local Rule 103.1.b). Plaintiffs nonetheless decline consent to consolidation of their case with the First MSI Litigation.

Hon. T.D. Chuang) issued a Memorandum Opinion 7 months later, on July 6, 2023. *Maryland Shall Issue, Inc. v. Montgomery County, Maryland*, 680 F. Supp. 3d 567 (D. Md. 2023). Stating that "the Court finds that [the First MSI] Plaintiffs have not established a likelihood of success on the merits of the claims at issue on the Motion," this Court denied the Motion. *Id*. at 593. To be clear, the "places of public assembly" identified in Bill 23-26E that Plaintiffs challenge in this case all were within Bill 21-22E's defined places of public assembly that the First MSI Plaintiffs unsuccessfully challenged in their emergency Motion in the First MSI Litigation.

## III. APPLICABLE LAW AND ARGUMENT

Temporary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [which is] to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc*., 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks omitted). Because such relief "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way," "[t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp*., 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted). Similarly, a preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted), which "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. De. Council*, 555 U.S. 7, 22 (2008) (quoting *Mazuerek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

The standards for granting a temporary restraining order and a preliminary injunction are the same. *See* Fed. R. Civ. P. 65(b). Accordingly, Plaintiffs must establish that "[they are] likely to succeed on the merits, [are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Maages Auditorium v. Prince George's Cnty., Md*., 4 F. Supp. 3d 752, 760 (D. Md. 2014), *aff'd*

*sub nom. Maages Auditorium v. Prince George's Cnty., Maryland*, 681 Fed. Appx. 256 (4th Cir. 2017). As the test is conjunctive, failure to establish any single factor is fatal to the Motion. "[A]ll four requirements must be satisfied to obtain the extraordinary remedy of a preliminary injunction." *JAK Productions, Inc. v. Bayer*, 616 Fed. Appx. 94, 95 (4th Cir. 2015). Plaintiffs cannot establish any one of the four.

**A. Plaintiffs Are Not Likely To Succeed On The Merits Of Any Of Their Claims.**

1. Sections 57-10 and 57-11 are Local Laws.

It is unclear what exactly Plaintiffs challenge as not a "local law" and therefore beyond the County's legislative authority under the Maryland Constitution. This fundamental failure means preliminary injunctive relief pursuant to Count I is not appropriate.

Count I of the Complaint appears to challenge only § 57-11(a) of the County Code as not a "local law." *See* ECF No. 1 ¶¶ 65, 66, 67, 70, 72, 73. Plaintiffs' target then veers wider in the Complaint's Prayer for Relief, which asks the Court to "issue a declaratory judgment that Chapter 57" in its entirety is not a local law. ECF No. 1 at 42 ¶ A. Plaintiffs' Memorandum fails to clarify. Their argument starts with, "Count I alleges that Chapter 57, as amended by Bill 23-26, is not local law… ." Mem. at 12. Bill 23-26E amended four sections of Chapter 57. *See* Ex. 9, Bill 23-26E at 1 (stating it amends §§ 57-1, 57-7, 57-10, and 57-11 of the Montgomery County Code). Subsequent argument in Plaintiffs' memorandum seems deliberately to muddy the waters further, attacking § 57-10 as not a local law under Count I. *See* ECF 8-1 at 16-17. Although § 57-10 appears in Count II of the Complaint, it appears nowhere in Count I. Plaintiffs' proposed preliminary injunction order affords no further detail. It asks the Court to prohibit "enforcement of Section 57-10 and Section 57-11(a) of Chapter 57 of the County Code as against persons who have a wear and carry permit issued by the Maryland State Police." ECF No. 8-10 at 1.

The rules of pleading, derived from basic due process principles, entitle a defendant to a clear statement of facts, claims alleged, and relief sought. This is even more acutely the case in the context of a motion for a preliminary injunction to prohibit enforcement of a democratically enacted law. This Court should not entertain the question of whether or not Plaintiffs are likely to prevail on the merits unless and until Plaintiffs provide the County fair notice required by the Rules as to exactly what merits are at issue.

Assuming Plaintiffs' challenge is only to § 57-11, that section is a local law, as it applies only within the County and has no extra-territorial effect. A charter county has authority to enact "local laws." *See* Md. Const. Art. XI-A, § 3 (a charter county "shall have full power to enact local laws"). A "local law" applies to only one political subdivision of the State, with no extra-territorial effect, and addresses issues of local importance. *See id.* § 4 ("any law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law"); *Engage Armament v. Montgomery Cnty., Md.*, 356 A.3d 79, 118 (Md. 2026) ("a local law 'applies to only one subdivision' and 'pertains only to a subject of local import'" (quotations omitted)).

Consideration of Plaintiffs' challenge here requires discussion of the Maryland Supreme Court's recent consideration of whether § 57-11(a), prior to amendment by Bill 23-26E, is a local law. County Code Section 57-11(a) prohibits the sale, transfer, possession, or transportation of listed firearms, or their ammunition or components, in or within 100 yards of a place of public assembly.[5] As set forth above, prior to November 2022, the County Code exempted State wear-and-carry permit holders from this prohibition. In other words, a person with a State-issued wear-and-carry handgun permit could still possess a handgun in or within 100 yards of a place of public

[5] County Code § 57-1 defines "place of public assembly."

assembly. Bill 21-22E removed the exception for wear-and-carry permit holders in November 2022. *See Engage Armament*, 356 A.3d at 92.

The First MSI Plaintiffs challenged that change to § 57-11(a) on several state law grounds, and persuaded the Montgomery County Circuit Court that § 57-11(a) was not a local law. *See Engage Armament*, 356 A.3d at 94-95.[6] On appeal, in April 2026, the Maryland Supreme Court in *Engage Armament* held § 57-11(a) was not a "local law" as it impacted a statewide interest with respect to State-issued wear and carry permit holders that travel on public highways and pass within 100 yards of a place of public assembly. *See Engage Armament*, 356 A.3d at 120-21. The Court viewed § 57-11(a) as effectively banning the carry of firearms on the County's "lengthy and complex highway system," which thereby "[i]mposes a burden on travel of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Id*. at 120 (quotations omitted).

The County quickly worked to bring its law into conformance with *Engage Armament*. Effective July 27, 2026, Bill 23-26E addressed this holding by adding an exception to § 57-11(a)'s public carry prohibition to match State law's public carry exception for firearm transportation. *See* Md. Code Ann., Crim. Law § 4-111 (2021); *see* ECF No. 1-4 at 7 (describing rationale for revision to § 57-11(a) in wake of *Engage Armament* decision). Under State law, a person generally must not, *inter alia*, "wear, carry, or transport a firearm" in certain defined areas,[7] but excepts from that prohibition:

---

[6] Plaintiff MSI was a plaintiff in that challenge, but the Circuit Court dismissed it for want of standing. *See* Ex. 10, Declaratory Judgment Order, *Maryland Shall Issue, Inc. v. Montgomery Cnty., Md.,* Civil No. 485899V (Montgomery Cnty. Cir. Ct. Dec. 15, 2023). MSI did not challenge its dismissal on appeal. The lead plaintiff in the State claims became another plaintiff, Engage Armament. MSI seems here to seek another bite at the same apple, from a different judge.

[7] State law prohibits wearing, carrying, or transporting firearms in several defined areas: an "area for children and vulnerable individuals"; in a "government or public infrastructure area," or a "special purpose area." *See* Md. Code Ann. Crim. Law. § 4-111(a)(2), (4), (8); (c); (d); and (e).

(11) a firearm that is carried or transported in a motor vehicle if the firearm is:

(i) locked in a container; or

(ii) a handgun worn, carried, or transported in compliance with any limitations imposed under § 5-307 of the Public Safety Article, by a person to whom a permit to wear, carry, or transport the handgun has been issued under Title 5, Subtitle 3 of the Public Safety Article.

Md. Code Ann., Crim. Law § 4-111(b)(11). As amended by Bill 23-26E, County Code § 57-11(b)(6) states verbatim this same exception to § 57-11(a)'s public carry prohibition. *See* Ex. 9, Bill 23-26E at 6.[8] The amendment therefore aligns County law with State law regarding the transport of handguns by persons with wear-and-carry State permits near sensitive locations as defined by law. In short, a State wear-and-carry permit holder may now wear, carry, or transport their handgun while in a motor vehicle in Montgomery County. Any burden of the County's law on travel, identified as a statewide concern by *Engage Armament*, no longer exists.

Despite these amendments by Bill 23-26E, Plaintiffs challenge § 57-11(a) as not a local law, claiming it "burdens" a person who resides outside the County, has a wear-and-carry permit, drives into the County, and then exits their vehicle within 100 yards of a place of public assembly. This argument is flawed and is not grounds for this Court to preliminarily enjoin § 57-11(a).

Plaintiffs fail to provide anything other than conclusory statements as to why § 57-11(a) has any impact, let alone burden, beyond the borders of Montgomery County. As admitted by Plaintiffs, § 57-11(a) only applies to persons who drive into the County and get out of their vehicles, and only impacts persons "the moment they stop and get out of their vehicles inside the

[8] Plaintiffs state incorrectly in ¶ 65 of their Complaint and their memorandum for a preliminary injunction that, as revised, § 57-11(b)(6) excepts "the possession of a handgun by a person who has a permit to carry the handgun under State law while the person travels upon public highways within 100 yards of a place of public assembly." *See* Compl. ECF No. 8-1 ¶ 65; Mem. at 13. While Bill 23-26E had that language when it was introduced, the County Council subsequently deleted it as evidenced by the double brackets around that language. *See* Ex. 9, Bill 23-26E at 6; *id.* at 1 (providing key to indicate that double boldface brackets indicated text "[d]eleted from existing law or the bill by amendment"); ECF No. 1-4 at 7-8 (discussing rationale for deletion of the originally proposed language from Bill 23-26E).

County." *See* Mem. at 13, 16. Plaintiffs' statistics—even if accurate—as to the number of firearm permit owners in the State of Maryland have no relevance whatsoever to the question of whether the County's law has effects beyond the County's borders.

*Engage Armament* held § 57-11(a) was not a local law because persons with State-issued wear-and-carry handgun permits who traveled on intrastate highways through the County could violate § 57-11(a) given how many places of public assembly there are in the County and how close they are to those highways. In contrast, the facts Plaintiffs present here involve a person who voluntarily enters the County and stops in the County. This does not transport § 57-11(a) or any other portion of the County Code into the realm of having extra-territorial effect simply because that person came from outside the County. A local law does not lose its characteristic as such simply because a person who resides outside the County drives into the County and exits their vehicle in a restricted sensitive location. Just as national businesses must observe the County's minimum wage law for employees working at any branches in the County, and non-County residents who litter on County roads are subject to the County's littering law, people who carry firearms in or near places of public assembly in the County are subject to § 57-11(a). This is not a burden outside of the County; rather, this is a function of the County regulating conduct within its borders pursuant to its home rule authority as a charter County.

To the extent § 57-11(a) creates "pockets"[9] where a person on foot cannot carry a firearm, it does so pursuant to express State authorization for localities to restrict firearms in or within 100 yards of places of public assembly. *See* Md. Code Ann., Criminal Law § 4-209(b)(1)(iii).[10] Unless

[9] Despite the existence of these "pockets," Plaintiffs' map reveals that a person may still carry a handgun in 74% of the County. *See* Mem. at 15.

[10] If Plaintiffs contend in a reply that Criminal Law § 4-209(b)(1)(iii)'s authorization of local gun regulation within 100 yards of places of public assembly violates the Maryland Constitution, Plaintiffs must provide notice of that constitutional challenge, by service of pleadings by certified mail, to the Maryland Attorney General's Office so that Office may determine whether to intervene and defend the law. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-405(c) (2020). The Office of the Attorney General submitted amicus briefs in support of the County's local regulatory

the General Assembly repeals this authorization, § 4-209(b) shows the State of Maryland considers possession of guns within 100 yards of places of public assembly to be a local issue properly regulated by counties.

Maryland's statutory concealed wear-and-carry permit scheme does not create an affirmative right to carry a firearm unburdened throughout the State. *See Engage Armament*, 356 A.3d at 114. Instead, the scheme articulates a general prohibition against the carry of handguns, with several carve-outs to that general prohibition. *See Id*. In this regard, "[n]othing about the statutory scheme or legislative history suggests that the General Assembly intended to mandate that local jurisdictions allow permit holders to carry concealed firearms in or in close proximity to" places of public assembly. *Id*. The possession of a State-issued wear-and-carry permit does not supersede or override the County's legislative authority to impose its own local laws.

Section 57-11(a) as amended by Bill 23-26E is not like other laws stricken down by Maryland courts as exceeding authority to enact "local laws." For example, in *McCrory v. Fowler*, 570 A.2d 834 (Md. 1990), a county law was not a local law because it purported to create a private cause of action in State court, a right reserved to either the General Assembly or the Maryland Supreme Court under its authority to modify the common law. *See id.* at 838. A county's attempt to regulate contracts signed and performed outside the county's borders was not a local law in *Holiday v. Universal*, 833 A.2d 518, 525 (Md. 2003). Finally, a city law that attempts to modify remedies available to individuals for violation of state law is not a local law. *See Assanah-Carroll v. Law Offices of Edward J. Maher, PC.*, 281 A.3d 72, 427 (Md. 2022). Section 57-11(a) does not modify state law or have any impact beyond the County's borders. It regulates consistently with Criminal Law § 4-209(b)(1), and it only impacts persons that set foot within the County.

---

authority under Criminal Law § 4-209(b) before the Circuit Court and the Appellate Court of Maryland in the *Engage Armament* case.

As amended by Bill 23-26E, Section 57-11(a) is a local law with no extraterritorial impact and fully within the County's legislative authority. Finally, since Plaintiffs purport add Section 57-10 to their Count I "local law" challenge in their memorandum, the County adopts the above analysis as to Section 57-10.

2. <u>As State Law Does Not Preempt Section 57-10, Plaintiffs are Not Likely to Succeed on the Merits as to Count II</u>.

Plaintiffs' argument that Section 57-10 of the County Code is expressly preempted fails because it falls within the legislative authority ceded to localities by the State in Criminal Law § 4-209(b), and otherwise is not expressly preempted by any provisions relied upon by Plaintiffs. Maryland courts recognize a presumption against preemption, with ambiguities resolved in favor of local regulation. Thus, when a local law is enacted under competent authority, it "should be upheld by every reasonable intendment, and reasonable doubts as to the validity of an ordinance should be resolved in its favor." *Mayor & Alderman of City of Annapolis v. Annapolis Waterfront Co*., 396 A.2d 1080, 1085 (Md. 1979).

Plaintiffs' express preemption argument relies on three clauses—Criminal Law § 4-209(a) (enacted in 1985),[11] an uncodified provision (Section 6) from Chapter 13 of the 1972 Maryland Laws, and Public Safety § 4-133(a), originally enacted in 1966.[12]

*Engage Armament* expressly considered the latter two express preemption clauses mentioned above, both of which pre-dated the authority granted to localities in 1985 to regulate

---

[11] *See* Ex. 11, 1985 Md. Laws Ch. 724. In 2002, the State recodified Article 27, Section 36H to Criminal Law § 4-209, without substantive change according to the revisor's note. *See* Ex. 12, 2002 Md. Laws Ch. 26. The State added Subsection (b)(3) in 2010 to forbid localities from prohibiting, under certain circumstances, the transportation of a firearm by a person who is carrying because of a court order requiring the surrender of the item. *See* Ex. 13, 2010 Md. Laws Ch. 712.

[12] Article 27 § 445(a) of the Maryland Code, enacted in 1966 (1966 Md. Laws Ch. 502), was recodified as Pub. Safety § 5-133 (2003 Md. Laws Ch. 5) without substantive change. *See* Ex. 14, 2003 Md. Laws Ch. 5, § 14 (stating that the recodification Bill "[s]hall be construed as a non-substantive revision, and may not otherwise be construed to render any substantive change in the law of the State").

firearms in Criminal Law § 4-209:

> With respect to Public Safety §§ 5-104, **5-133(a)**, and 5-134(a), and **§ 6 of Chapter 13 of the 1972 Maryland Laws**, both the legislative history and our interpretive principles point persuasively in the same direction: the General Assembly's intent was for the later-enacted and more specific § 4-209(b)(1) to prevail over the earlier-enacted and more general preemption provisions, thus permitting local regulation of firearms in the three specific areas set forth in [Criminal Law] § 4-209(b)(1).

*Engage Armament*, 356 A.3d at 103 (emphasis added).[13]

Plaintiffs' express preemption claim therefore rises and falls solely on the language in Criminal Law § 4-209(a). As recently analyzed by the Maryland Supreme Court:

> Section 4-209(a) is a broad express preemption of local firearm regulations addressing nine types of conduct, "[e]xcept as otherwise provided in this section[.]" Section 4-209(b)(1) then provides express authorization for local firearm regulations addressing six of those types of conduct in three specific areas: (1) with respect to minors; (2) with respect to law enforcement officials; and (3) within 100 yards of or in a park, school, public building, or other place of public assembly. Thus, under § 4-209, County regulations of the purchase, sale, transfer, ownership, possession, and transportation of firearms are permissible when—and only when—limited to one of those three specific areas.

*Engage Armament*, 356 A.3d at 100.

The County enacted § 57-10 in 1981,[14] and the General Assembly addressed the fate of existing local firearms laws when it enacted § 4-209 in 1985. Specifically, Criminal Law § 4-209(c) provides: "To the extent that a local law does not create an inconsistency with this section or expand existing regulatory control, a county . . . may exercise its existing authority to amend any local law that existed on or before December 31, 1984."

---

[13] *Engage Armament* reviews in detail the impact of many express preemption provisions in the State's firearm regulatory scheme and the local firearm regulatory authority in Criminal Law § 4-209. *See Engage Armament*, 356 A.3d at 101-103. *See also* 76 Md. Op. Att'y Gen. 240, 243-46 (1991) (discussing legislative history of local firearm regulatory authority and preemption).

[14] *See* Ex. 1 and Ex. 3.

Section 4-209(c) is essentially a savings clause for local existing laws, enacted under preexisting local regulatory authority (*i.e.*, before the authority granted in § 4-209(b) in 1985),[15] that were consistent with the grant of authority to regulate in § 4-209(b). *See also* Ex. 15, Md. Att'y Gen. Letter to Md. Gov. Hughes, H.B. 176 Bill File at 2 (May 23, 1985) (Section 4-209(c) "[c]ould be read to say that existing law may be amended if the law is [c]onsistent with this section and does not expand existing regulatory control"). This is especially clear when read in conjunction with the uncodified Section 2 of the 1985 law, 1985 Maryland Laws Ch. 724, § 2 (Ex. 11), which states, "This Act shall not affect or repeal any local law in existence as of January 1, 1985." Therefore, if § 57-10 is consistent with the authority in Criminal Law § 4-209(b), the County can amend § 57-10 consistent with the authority granted in Criminal Law § 4-209(b), as long as it does not expand its existing regulatory authority. Md. Code Ann., Crim. Law § 4-209(c).

Section 57-10 prohibits carrying a gun on one's person or in their vehicle unless on a "lawful mission for which it is necessary to carry a gun upon his person." County Code § 57-10(a). While the phrase "lawful mission" is not defined and appears nowhere else in the County Code, it must be read in context of Chapter 57. *See Engage Armament*, 356 A.3d at 100 (to identify legislative intent in construing a statute, courts review provision "not in isolation but within the context of the statutory scheme in which it belongs"). Chapter 57 of the County Code defines an "urban area" for the County, prohibits discharge of weapons within that urban area, and contemplates the discharge of guns outside the urban area, subject to exceptions. *See* County Code

[15] Prior to Criminal Law § 4-209, the County's authority to legislate firearms derived from the more general authority to regulate for the purposes of the general health and welfare in the Express Powers Act. *See* Md. Code Ann., Local Gov't § 10-206(a) (2013); *Engage Armament*, 356 A.3d at 98 (the County's authority generally to enact laws stems from the Express Powers Act). Laws regulating guns to address gun violence are unquestionably a matter of peace, health, and welfare.

§§ 57-1, 57-4, 57-5.[16] The discharge of firearms outside of the urban area, consistent with Chapter 57's provisions, is a "lawful mission" under the meaning of § 57-10.

The meaning of "lawful mission" can also be gleaned from § 57-10's exceptions to its prohibition against carry: the prohibition does not apply to guns carried by a security guard (§ 57-10(b)), the military or peace officers (§ 57-10(c)), or guns transported or used for hunting or target practice (§ 57-10(d), (e)). Carrying a firearm by those persons or for those activities would qualify as a "lawful mission," and exemptions of those activities from any prohibition against public carry is consistent with Criminal Law § 4-209(b)(1)(ii) and (b)(3).

The phrase "lawful mission" must also be read with Bill 23-26E's amendment to § 57-10, which makes clear that § 57-10's prohibitions do not apply to a gun locked away in a vehicle, or to carrying a gun on one's person or in a vehicle if the person has a State-issued wear-and-carry permit. *See* Ex. 9, Bill 23-26E. Section 57-10's "lawful mission" therefore encompasses persons carrying handguns on their person or in a vehicle in compliance with a State-issued wear-and-carry permit.

Finally, Bill 23-26E's amendment to § 57-10 did not expand its regulatory scope. In fact, it contracted it, limiting its application by adding exemptions for persons with State-issued wear-and-carry permits. The County added this amendment to harmonize § 57-10 with similar language added to § 57-11(a) by Bill 23-26E to respond to the Supreme Court's *Engage Armament* conclusion that § 57-11(a) was not a local law. *See* Ex. D to Complaint, ECF No. 1-4 at 8 (noting County Council subcommittee proposed the amendment at Lines 79-87 to § 57-10 "[t]o make

[16] Criminal Law § 4-209(d) authorizes the County "to regulate the discharge of handguns, rifles, and shotguns."

Chapter 57 internally consistent, and to avert similar [local law] challenges to Code Section 57-10 {Keeping guns on person or in vehicles}").[17]

As § 57-10 is not preempted, and Bill 23-26E's amendments were within the scope of authority provided in Criminal Law § 4-209(c), Plaintiffs' request for a preliminary injunction should be denied.

3. Plaintiffs are not likely to succeed on the merits of Count III that Sections 57-10 and/or 57-11 are Unconstitutional.

In 2008, the United States Supreme Court conducted its "first in-depth examination" of the Second Amendment in *District of Columbia v. Heller*, and held that a ban against handgun possession in the home violates the Second Amendment. 554 U.S. 570, 635 (2008). Two years later, in *McDonald v. City of Chicago*, the Court determined that the Second Amendment applies to the states via the Fourteenth Amendment. 561 U.S. 742, 750 (2010). Over a decade after *McDonald*, the Court decided *Bruen*, holding that "the Second and Fourteenth Amendment protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10.

All three cases also recognize, however, that "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. *See also id*. at 626 (the right to bear arms for self-defense is not a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"); *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring) ("[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations" (quoting *Heller*, 554 U.S. at 636)); *McDonald*, 561 U.S. at 786 (noting that it is "important to keep in mind" that *Heller*

[17] For the reasons noted, State law does not preempt Section 57-10. If the Court disagrees, the County notes the County Code has a general severability clause at § 1-202, "Severability":
(a) *Severable provisions.* Except as provided under subsection (b), it is the intent of the Council that the provisions of this Code and all laws enacted by the County Council are severable. If a provision is held invalid or inapplicable, the remainder of the Code or the law remains in effect.
(b) *Nonseverable provisions.* The County Council may expressly provide by law that certain provisions are not severable.

did not cast doubt on certain "longstanding regulatory measures" in connection with firearms). Thus, "American legislatures have long regulated the possession and use of firearms to some degree." *United States v. Hermani*, 146 S. Ct. 1677, 1685 (2026). The Second Amendment does not preclude such regulations, so long as they are "consistent with the Second Amendment's text and historical understanding." *Bruen* 597 U.S. at 27.

a. Section 57-10 is Constitutional.

As an initial matter, Plaintiffs "seek only limited relief" in their Motion, enjoining enforcement of Sections 57-10 and 57-11(a) "in so far as these two sections apply to a person who has received a wear and carry permit issued by the Maryland State Police." Mem. at 1. As it relates to Section 57-10, the plain language of that provision demonstrates that there is no conceivable irreparable harm that the requested injunction would prevent. Section 57-10 already states that it "must not be interpreted to prohibit a firearm that is carried or transported on person or in a motor vehicle if the firearm is: … a handgun worn, carried, or transported in compliance with any limitations imposed under Section 5-307 of the Public Safety Article of the Maryland Code, as amended, by a person to whom a permit to wear, carry, or transport the handgun has been issued under the Public Safety Article of the Maryland Code, as amended." Ex. 9, Bill 23-26E. Because each of Plaintiffs has a wear and carry permit issued by the Maryland State Police,[18] there is no conceivable harm to them that needs protection via injunction.

Moreover, Section 57-10 is Constitutional. Plaintiffs concede that, under *Bruen*, "States may condition the concealed carry of handguns by requiring shall-issue carry permits." Mem. at 27. Indeed, as Plaintiff MSI is well-aware, the Fourth Circuit considers itself "not free to ignore

[18] *See* ECF No. 8, Declaration of Julio Barreto, Jr. at ¶ 3; Declaration of Stephen Johnston at ¶ 4; Declaration of Dr. Howard Sachs at ¶ 3; Declaration of Alan Duncan at ¶ 3; Declaration of Matthew Edward Moore at ¶ 3; and Declaration of Arthur Scott Thacher at ¶ 3.

the Supreme Court's substantive dictum on 'shall-issue' licensing laws," and held "that non-discretionary 'shall issue' licensing laws are presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the *Bruen* framework." *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 222 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1049 (2025). Whether "prior to Bill 23-26" Section 57-10 arguably "did not respect carry permits at all" (Mem. at 27) is of no moment to this Court, because its plain language now excepts such carry permit holders from its scope.

Perhaps recognizing the fallacy of their argument in light of the plain language of Section 57-10, Plaintiffs try to contrive an entitlement that goes beyond handguns, and to long guns. (Mem. at 27). This position does not raise a valid Constitutional challenge. Plaintiffs' argument in the first instance ignores exceptions (a), (d), and (e) of Section 57-10, the text of which Plaintiffs misleadingly omit from their Motion. *See* Ex. 9. Moreover, as the Supreme Court repeatedly has advised since its "first in-depth examination" of the Second Amendment, the Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626, 635. *See also Wolford v. Lopez*, 146 S. Ct. 2032, 2042 (2026) (recognizing the Second Amendment right is not "absolute" and is "not an 'unlimited' right 'to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose'"). Indeed, the Supreme Court in *Bruen* held only that "the Second and Fourteenth Amendments protect an individual's right to carry a *handgun* for self-defense outside the home." 597 U.S. at 8-9 (emphasis added). Because Section 57-10 permits carriage of handguns by licensed persons, Plaintiffs necessarily fail to "establish that no set of circumstances exists under which [Section 57-10] would be valid," or that Section 57-10 "'lacks any 'plainly legitimate sweep.'" *LaFave v. County of Fairfax, Virginia*, 149 F.4th 476, 483 (4th Cir. 2025). Especially

for the extraordinary preliminary relief they seek in their Motion, Plaintiffs necessarily fail their burden to prove a likelihood of success on their facial challenge to Section 57-10.[19]

b. Section 57-11 is Constitutional.

Plaintiffs are not likely to succeed on the merits of their claim that Section 57-11 is unconstitutional, because that section permissibly regulates carriage in sensitive places. Despite its ruling in *Heller*, the Supreme Court clarified that "nothing in our opinion should be taken to cast doubt on … laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. at 626. In *Bruen*, the Court considered *Heller's* "discussion of [those] 'longstanding' 'laws'" and noted "no disputes regarding the lawfulness of such prohibitions." 597 U.S. at 30.

Plaintiffs do not—and cannot—suggest otherwise, and indeed "do not challenge the County's bans in schools, government buildings, polling places and legislative assemblies" (Mem. at 24)—all well-settled sensitive places under *Bruen*. Instead, Plaintiffs appear to focus their current challenge on certain of the County's defined sensitive places to the extent they are "privately owned and open to the public." *See, e.g.,* ECF No. 1 at 43 (Prayer for Relief C.). Their argument depends upon, yet fundamentally and fatally misconstrues, the Supreme Court's decision in *Wolford*.

---

[19] The County anticipates that Plaintiffs, having failed to surmount their "difficult task … to establish that there is 'no set of circumstances' under which the law would be valid," will attempt to argue that they bear the lesser burden of an "as-applied" challenge focusing on the "circumstances of the particular plaintiffs and whether, in light of those circumstances, the challenged law [is] unconstitutionally applied to *those* plaintiffs." *Maryland Shall Issue v. Moore*, 116 F.4th at 225-26. *See also United States v. Rahimi*, 602 U.S. 680, 693 (2024) (noting that a facial challenge "is the 'most difficult challenge to mount successfully," and "to prevail, the [g]overnment need only demonstrate that [the challenged provision] is constitutional in *some* of its applications."). Any such fallback suggestion would be disingenuous. Despite the limited relief that they seek as to the scope of their requested injunction, Plaintiffs clearly challenge the facial validity of Sections 57-10 and 57-11(a) of Bill 23-26E, arguing, for example, that "the amendment is thus void *ab initio*." Mem. at 28.

The Supreme Court began its analysis in *Wolford* by noting that "Hawaii imposes *two* additional restrictions on carrying firearms. The first bans the possession of a firearm in significant categories of places … . Some of these places are owned by the State, but many of the categories include privately owned property." 146 S. Ct. at 2046 (emphasis added). The Court, however, did not review that restriction at all. Rather, it stated that Hawaii's "*second* restriction" that "generally prohibits licensed individuals from carrying a firearm, even if unloaded or inoperable, 'on private property of another'" was "*the one at issue in this case*." 146 S. Ct. at 2046 (emphasis added). *See also id*. at 2047 ("We granted certiorari to decide whether Hawaii may prohibit licensed concealed-carry permit holders from carrying handguns on private property open to the public unless the property owner gives express permission"). It is that second, general restriction, that applied to *all* private property in the State, that the Supreme Court held is unconstitutional. *Id*. at 2053.

Plaintiffs are simply wrong that *Wolford* requires some separate analysis and/or a separate "'well-established representative historical analogue'" for sensitive places that happen to be "privately owned places open to the public." Mem. at 25. The Supreme Court never said that it did, even though "many of the categories" of sensitive places in Hawaii's first restriction "include privately owned property." *Wolford*, 146 S. Ct. at 2046. The Supreme Court in fact rejected a similar argument in *Rahimi*, where it declined to read its decisions as "categorical rules," stating in pertinent part:

> Rahimi argues *Heller* requires us to affirm, because Section 922(g)(8) bars individuals subject to restraining orders from possessing guns in the home, and in *Heller* we invalidated an "absolute prohibition of handguns ... in the home." … But *Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by "felons and the mentally ill," are "presumptively lawful."

602 U.S. at 699 (citations omitted). Similarly here, *Wolford* did *not* establish a categorical rule that the Constitution prohibits laws that forbid firearm possession in privately owned places. Plaintiffs concede this fact, as they "do not challenge the County's ban in schools" (Mem. at 24)—including in private ones.

Moreover, Plaintiffs wrongly suggest that the *Wolford* Court's remand somehow requires "[t]he Ninth Circuit's 'sensitive places' rulings [to] be reconsidered on remand." Mem. at 26. In fact, the very opposite is true. On August 10, 2026, the Ninth Circuit took up proceedings on remand and acted as follows:

> In 2023, the Hawaii legislature enacted Act 52, which prohibits the carry of firearms in many sensitive places. The law also prohibits the carry of firearms onto private property unless the owner allows it. Several Plaintiffs brought this action, asserting that the law violates the Second Amendment, and they sought a preliminary injunction as to some aspects of the law. The district court granted in part and denied in part Plaintiffs' request. Defendant Anne E. Lopez, Attorney General of the State of Hawaii, timely appealed.
>
> We affirmed the preliminary injunction in several respects and reversed the preliminary injunction in several respects. … Relevant here, we held that Plaintiffs had not shown a likelihood of success in challenging the law's default rule as to private property, which is codified in Hawaii Revised Statutes section 134-9.5. Id. at 992–96. The Supreme Court granted certiorari *limited to the question concerning the private-property rule*. … *Addressing that question only*, the Court reversed our determination and remanded for further proceedings. … Accordingly, we now affirm the district court's injunction as to Hawaii Revised Statutes section 134-9.5. *Our analysis as to all other aspects of Hawaii's law is unaffected*.

*Wolford v. Lopez*, No.23-16164, 2026 WL 2291925, *2 (9th Cir. Aug. 10, 2026) (emphasis added). Nor did the Ninth Circuit change its ruling on—or reexamine in any respect—the many privately owned sensitive places included in California's law—many of which the Ninth Circuit upheld at the injunction phase. *See Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) at 982 (parks); 985 (playground or public or private youth center and bars and restaurants that serve liquor); and 987 (places of amusement, including libraries). The Ninth Circuit on remand still, as it originally had, reversed the District Court's injunction on Hawaii's sensitive places law insofar as it relates

to bars and restaurants that serve liquor (see *Wolford*, 2026 WL 2291925 at *2 and *Wolford*, 116 F.4th at 985) and parks (see *Wolford*, 2026 WL 2291925 at *2 and *Wolford*, 116 F.4th at 982).

Notably, Plaintiffs ignore a very relevant case that is much closer to home. Although decided before the Supreme Court's decision in *Wolford*, the Fourth Circuit also examines privately owned and publicly owned sensitive places together, and separate from any broad prohibition of carriage on private property. *See Kipke v. Moore*, 165 F.4th 194 (4th Cir. 2026) at 220 (enjoining Maryland from enforcing carriage restrictions generically on all private property in the State held open to the public) and 212 (but ruling that Maryland's carriage restrictions on other private/public sensitive places, such as school grounds, are constitutionally sound).

To be clear, Plaintiffs do not seem to challenge, in their Complaint or their Motion in *this* case, the "'well-established, representative historical analogue[s]'" for the narrowed sensitive places that remain in Bill 23-26E. Plaintiffs *only* try to expand and misapply *Wolford* to suggest—flatly incorrectly—that no sensitive place can include privately owned property. *Wolford* made no such finding. With *Wolford* inapposite to this question, Plaintiffs' bald attempt at judge shopping is exposed here: this Court engaged in a thorough, well-reasoned analysis of the ample historical analogues presented by the County in the MSI Litigation to each of the sensitive places that remain in Bill 23-26E. *See Maryland Shall Issue*, 680 F. Supp. 3d at 584-85 (places of worship), 585-88 (parks, recreational facilities, and multipurpose exhibition facilities), 588 (libraries), and 589-90 (100-yard buffer zones). The Court's conclusion was that Plaintiffs do not have a likelihood of success on the merits of their Second Amendment challenge to *any* sensitive place in Bill 23-26E.

### B. Plaintiffs Will Not Suffer Irreparable Harm If The Court Does Not Issue A Preliminary Injunction.

Plaintiffs fail to make a clear showing that "irreparable injury is **likely** in the absence of an injunction." *Winter v. NRDC, Inc.,* 555 U.S. 7, 22 (2008) (emphasis in original). The harm to be

suffered may not be "remote or speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 216 (4th Cir. 2019) (quotation omitted). Additionally, harm is irreparable when it cannot be fully rectified by the final judgment after trial. *Id.*

The *only* irreparable harm that Plaintiffs posit they will suffer is a purported deprivation of a constitutional right. Mem. at 9-11. However, "the likelihood of irreparable harm on this basis is dependent on the likelihood of success on the merits of the claim." *Maryland Shall Issue*, 680 F. Supp. 3d at 593. Because Plaintiffs have not shown a likelihood of success on the merits of their claims, Plaintiffs' Motion does not support irreparable harm here.

Moreover, despite Judge Chuang's emphasis on the relevance of doing so in the First MSI Litigation, Plaintiffs here—which include MSI which was party to the First MSI Litigation—still "have not provided any examples of prosecutions … for possessing a firearm in the scenarios they have referenced, such as a prosecution for possessing a firearm on a public street or area that happens to be within 100 yards of a place of public assembly, or for carrying a firearm at a place of worship." *Maryland Shall Issue*, 680 F. Supp. 3d at 594. That failure negates the "likelihood" of "arrest and conviction for a felony firearm offense"—and therefore a lack of imminent harm. *Id*.

Further negating any imminent harm or emergency, these same prohibitions have existed in County law, in substantially the same form, *since 1997*. *See* Section II.A. above. Plaintiff MSI engaged in the First MSI Litigation for the past five years, but did not challenge Section 57-10 in any Complaint. Instead, the First MSI Plaintiffs attempted to sneak in a challenge to Section 57-10 late in the litigation, which the Supreme Court of Maryland rejected, stating, "Here, as noted, the operative complaint did not raise any issue or seek any relief concerning § 57-10. Instead, the Challengers first raised a challenge to that provision in their cross-motion for summary judgment

and in their associated 103-page memorandum in support thereof. When they did so, the County properly objected. Had the Challengers wanted to pursue a challenge to § 57-10 at that point, they should have sought leave to amend their complaint. They did not do so. Under those circumstances, the court erred in granting relief concerning that section." *Engage Armament*, 356 A.3d at 97.

Even if this Court were to enjoin County law, Plaintiffs still would be prohibited by State law from engaging in that same conduct. *See* Section III.A.2 above. There is no support for the notion that Plaintiffs now are suffering irreparable harm that would be avoided by the injunctive relief that Plaintiffs seek here.[20]

### C. The Balance Of The Equities And The Public Interest Weigh In Favor Of Denying Plaintiffs' Request For A Preliminary Injunction.

When injunctive relief is sought against the government, "the government's interest is the public's interest," and the third and fourth elements necessary for an injunction—the balance of the equities and the public interest—merge. *See Ass'n of Cmty. Cancer Cntrs. v. Azar*, 509 F. Supp. 3d 482, 501 (D. Md. 2020) (citing *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) and *Nken v. Holder*, 556 U.S. 518, 435 (2009)).

"'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012). That notion applies equally to the County here. Moreover, a government's "[i]nability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). This is especially true when the law involves public safety. *See Maryland*, 567 U.S. at 1303.

---

[20] Plaintiffs do not even attempt to explain, or provide a shred of authority for, their request for some "temporary administrative stay." Mem. at 1. That request finds no support in law and should be denied.

Courts historically recognize that public safety—albeit in a means-end scrutiny context—is a compelling governmental interest. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 750 (1987) ("the Government's general interest in preventing crime is compelling"); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("[t]he legitimate and compelling state interest in protecting the community from crime cannot be doubted" (quotation omitted)). The Founders reserved to the states, and by extension local governments such as the County, police powers to protect the public and to prevent violence. *See United States v. Morrison*, 429 U.S. 598, 618 (2000) (stating there is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims"). Staying enforcement of Bill 23-26E will undermine the strong interest that the County has in the safety of the public, and in preventing gun violence in areas where people, especially vulnerable populations, congregate.

Finally, "there is a public interest in not prematurely enjoining Section 57-11 before a final determination on constitutionality is made." *Maryland Shall Issue*, 680 F. Supp. 3d at 594. This fact weighs especially in favor of the County, when the First MSI Plaintiffs asserted—and lost—a similar delayed challenge to County law that—for purposes of the alleged application to Plaintiffs—has been on the books for decades.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

By: /s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber (Bar ID #06095)
jschwaber@steinsperling.com
(301) 354-8110 (facsimile)
Deanna L. Peters (Bar ID #15674)
dpeters@steinsperling.com
(301) 354-8131 (facsimile)
STEIN SPERLING BENNETT
DE JONG DRISCOLL PC
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020

/s/ Erin J. Ashbarry
Erin J. Ashbarry (Bar ID #26298)
Chief, Division of Government Operations
erin.ashbarry@montgomerycountymd.gov
Office of the County Attorney
101 Monroe Street, Third Floor
Rockville, Maryland 20850
Tel: (240) 777-6700
Fax: (240) 777-6705

*Attorneys for Montgomery County, Maryland*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of August, 2026, a copy of the foregoing was sent to all counsel of record via CM/ECF.

/s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber (Bar ID 419681)