**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JULIO BARRETO, JR., *et al.*,<br><br>*Plaintiffs*,<br><br>MONTGOMERY COUNTY, MD,<br><br>*Defendant.* | Case No. 26-cv-02912-DKC |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTIONS FOR AN ADMINISTRATIVE STAY, FOR A TRO AND FOR A PRELIMINARY INJUNCTION**

Matthew Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
Larosieremm@gmail.com
District Court Bar # 32471
Phone: (561) 452-7575

Mark W. Pennak
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd, Ste. C #1015
Baltimore, MD 21234
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar # 21033

Dated: August 31, 2026

*Counsel for Plaintiff*

## TABLE OF CONTENTS

ARGUMENT ........................................ 1

I. Sections 57-10 and 57-11(a) Are "General Laws" Under the Maryland Constitution ... 1

II. Sections 57-10 Is Preempted ........................................ 5

III. Section 57-10 and Section 57-11 Are Invalid Under The Second Amendment ............. 6

IV. A Preliminary Injunction Is Appropriate ........................................ 14

CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES

**Cases:**

*Adkins v. Crown Auto, Inc.*, 488 F.3d 225 (4th Cir. 2007) ........................................ 2

*ANJRPC v. Attorney General of New Jersey*, 183 F.4th 211 (3d Cir. 2026) (en banc) ................ 11

*Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325 (1867) ........................................ 8

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ........................................ 7

*Engage Armament LLC v. Montgomery County, Md.,* 494 Md. 1 (2026) ............................. passim

*Ezell v. City of Chicago,* 846 F.3d 888 (7th Cir. 2017) ........................................ 12

*Garrett v. Call Federal Credit Union,* 2024 WL 3928888 (E.D. Va. 2024) ................................. 1

*Kipke v. Moore*, 165 F.4th 194 (4th Cir. 2026). ........................................ 8, 9, 11

*Kipke v. Moore*, 695 F.Supp.3d 638, 662 (D.Md. 2023),
*aff'd in part,* 165 F.4th 194 (4th Cir. 2026) ........................................ 14

*Koons v. Attorney General New Jersey,* 156 F.4th 210 (2025) ........................................ 13

*Lara v. Commissioner*, 125 F.4th 428 (3d Cir. 2025), *cert. denied,*
2026 WL 1871315 (U.S. Jun. 30, 2026) ........................................ 11

*Ledford v. Peeples*, 657 F.3d 1222 (11th Cir. 2011) ........................................................ 2

*MSI v. Montgomery Co.*, 680 F.Supp.3d 567 (D.Md. 2023) ................................................. 10

*New York State Rifle & Pistol Ass'n. v. Bruen*, 597 U.S. 1 (2022) .......................... 8, 9, 11, 12, 15

*Nicholson v. Durant,* 162 F.4th 417 (4th Cir. 2025)........................................................ 2

*NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc), *cert. denied sub. nom, NRA v. Glass*, 2026 WL 1871313 (U.S. Jun 30, 2026) ........................................................ 10

*NRA v. Bondi*, 61 F.4th 1317 (11th Cir. 2023) ........................................................ 10

*Reese v. ATF*, 127 F.4th 583 (5th Cir. 2025) ........................................................ 11

*Richardson v. Shapiro & Brown, LLP,* 751 Fed.Appx. 346 (4th Cir. 2018)................................ 15

*Roy v. Ivy,* 53 F.4th 1338 (11th Cir. 2022)........................................................ 2

*Sanford v. Smith*, 490 Fed.Appx. 570 (4th Cir. 2012)........................................................ 2

*SFFA v. Harvard*, 600 U.S. 181 (2023)........................................................ 8

*United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024)........................................................ 11

*United States v. Hemani*, 146 S.Ct. 1677 (2026) ........................................................ 14

*United States v. Rahimi*, 602 U.S. 680 (2024) ........................................................ 11, 14

*Wolford v. Lopez,* --- F.4th ----2026 WL 2291925 (9th Cir. Aug. 10, 2026) ................................. 9

*Wolford v. Lopez,* 116 F.4th 959 (9th Cir. 2024) ........................................................ 12

*Wolford v. Lopez*, 146 S.Ct. 2032 (2026) ........................................................ 8, 12, 13, 14

*Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024), *cert. denied*, 145 S.Ct. 1924 (2025) ............. 11

**Statutes:**

1985 Maryland Laws Ch. 724 § 2........................................................ 5

MD Code, Natural Resources, § 10-410(c)(1)........................................................ 7

Md. Code, Criminal Law, § 4-209(b)(1)(iii)........................................................ 5, 6, 7

Md. Code, Criminal Law, § 4-209(c) .................................................................... 5, 6, 7, 15

Bill 23-26, Ch. 18, Laws of Mont. Co. 2026 ........................................................... *passim*

Section 57-10, Montgomery County Code ............................................................... *passim*

Section 57-11(a), Montgomery County Code ........................................................... *passim*

**Rules:**

Rule 12(e), Fed.R.Civ.Proc. ............................................................................................ 2

Rule 8 of Fed.R.Civ.Pro ................................................................................................... 2

**Constitutional Provisions:**

Article XI-A, Maryland Constitution ................................................................................. 1

U.S. Constitution, Amendment 2 ..................................................................................... *passim*

## ARGUMENT

### I. Sections 57-10 and 57-11(a) Are "General Laws" Under the Maryland Constitution

Under Count I, Plaintiffs seek relief from the operation of both Section 57-10 and Section 57-11(a) on grounds that these two Sections are general laws under Article XI-A of the Maryland Constitution because, *inter alia,* the effects of Section 57-10 and Section 57-11(a) are not limited to "the people who live in the county," *Engage Armament LLC v. Montgomery County, Md.,* 494 Md. 1, 26 (2026), and "impose[] a burden on travel 'of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.'" *Id.* at 28. "Even an act of the General Assembly cannot validly authorize a county to pass a general law." *Id.* at 25.

The County argues first that Count I of the Complaint challenges only Section 57-11(a) and not Section 57-10. County Br. at 9. Not so. The operation of "Section 57-10 of Chapter 57," is detailed at Paragraphs 15 and 16 of the Complaint. Section 57-10 is thereafter expressly referenced in Paragraph 21, which alleges that "[t]he scope of places covered by Section 57-10, as amended by Bill 23-26, is even wider [than Section 57-11(a)], as the prohibitions imposed by Section 57-10 are facially County-wide and thus not limited to particular places or within 100 yards of places of public assembly, as regulated by Section 57-11(a)." Paragraph 56 then alleges that "[e]ach of MSI's members who possess or transports firearms in Montgomery County is injured by Section 57-10 and Section 57-11(a) of Chapter 57."

Each of these Paragraphs of the Complaint are incorporated into Count I by Paragraph 61 of the Complaint, which alleges that "[t]he Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint." That incorporation by reference is sufficient. See, e.g, *Garrett v. Call Federal Credit Union,* 2024 WL 3928888 at *9 (E.D. Va. 2024) ("It is well established that Rule 8(a)(2) does not require that each count in a complaint restate the

factual basis for the right to relief; a count in a complaint may incorporate by reference facts alleged elsewhere in the complaint."). See also *Sanford v. Smith*, 490 Fed.Appx. 570, 571 (4th Cir. 2012) (where the complaint "incorporates by reference all of the prior allegations in a complaint, we examine the entire complaint to determine if the pleading requirements of Rule 9(b) are satisfied"), citing *Adkins v. Crown Auto, Inc.*, 488 F.3d 225, 232 (4th Cir. 2007). *See also Roy v. Ivy,* 53 F.4th 1338, 1352–53 (11th Cir. 2022).[1]

Paragraph 71 of Count I then addresses the absence of any *mens rea* provision in "Chapter 57." The strict liability imposed by Chapter 57 magnifies the *in terrorem* effect of the County's law, fosters endless traps for the unwary and enhances the potential for arbitrary or discriminatory enforcement. See *Engage Armament*, 494 Md. at 69. Paragraph 72 of Count I alleges that "Chapter 57 will create a nightmarish web of local laws that could vary from county to county, from city to city, and from town to town, all of which could impose criminal penalties of the sort imposed by Montgomery County under Chapter 57." These allegations concerning "Chapter 57" apply equally to both Sections. All these allegations of the Complaint are sufficient to put the County "on notice" under Rule 8 of Fed.R.Civ.Pro. *Nicholson v. Durant,* 162 F.4th 417, 425-26 (4th Cir. 2025). If, in good faith, the County was truly uncertain about the scope of Count I, the proper path would be to move for a more definite statement under Rule 12(e). See, e.g., *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011). No such motion has been filed. The County's suggestion that the Complaint leaves it without notice cannot be taken seriously.

The County insists that because Section 57-11(a) exempts permit holders while traveling in a vehicle, the burden on travel identified in *Engage Armament* "no longer exists." Co. Mem.

[1] *Engage Armament* never reached the legality of Section 57-10 because Section 57-10 was not amended by Bill 21-22 and because "[t]he complaint does not directly or indirectly mention §§ 57-10 or 57-11(d), or any claims relating to those provisions." 494 Md. at 6.

at 12. That assertion blinks reality. The scope of Section 57-10 is indisputably County-wide and applies to all permit holders, including non-residents, who travel within or into the County. Similarly, Section 57-11 criminalizes any permit holder, whether a resident or not, who merely gets out of his or her vehicle within or thereafter enters any of the thousands of 100-yard, gun-free zones in which all firearms (and ammunition and components) are banned by Section 57-11(a). Non-resident permit holders regularly "travel" to and get out of their vehicles at destinations falling within one or more of the thousands of the County's 100-yard gun-free zones. See, e.g., Duncan Decl. ¶¶ 3, 4; Thacher Decl. ¶¶ 3, 4, 5, 6; Johnston Decl. ¶¶ 6, 10. That is a "burden" on travel by permit holders, "including the many who reside outside the County but drive within it," because they are faced "with the choice of significant travel restrictions or regularly yielding their benefits as permit holders." *Engage Armament*, 494 Md. at 70. That burden makes Bill 23-26 a general law because travel is "of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Id.* at 69 (citation omitted).

The County contends that Plaintiffs have provided only "conclusory statements" concerning the impact of the 100-yard gun-free zones adopted by Section 57-11(a). Co.Mem. at 12. That contention is just wrong. Paragraph 17 of the Complaint relies on GIS Open Data to identify, *by address,* thousands of specific locations indisputably governed by Section 57-11(a). The County does not object to Plaintiffs' request that this Court take judicial notice of this data. P.Mem. at 14. See *Engage Armament*, 494 Md. at 27 (noting the County's argument that permit holders could "create[e] maps identifying the areas in which carry is prohibited"). Examples of such locations are also specifically identified by Declarations of each of the Plaintiffs, including MSI and non-resident Plaintiffs, each of whom identify multiple locations and addresses in which

the bans imposed by the 100-yard zones affect their daily lives as they get out of their vehicles and move about in the County. The County does not dispute any of these Declarations.

The Declarations and the Complaint are *further* supported by the Declaration and Report of John Lettman, who uses undisputed government data to create a scrollable, interactive map that fully illustrates the thousands of often overlapping or interlocking, 100-yard gun-free zones in which all guns are banned by Section 57-11(a). See **https://public.johnlettman.com/montgomery/.** See P.Mem. at 15, Complaint, ¶ 19. The user of this website can zoom down and move a mouse along a specific location to obtain detailed data about a specific "place of public assembly," including the address, owner, folio, parcel number, property and land use codes, type and size (in acreage) of the location. The color shading delineates precisely the scope of the 100-yard gun-free zone associated with each particular location. There is nothing remotely "conclusionary" about this data, none of which is disputed by the County. See Co. Mem. at 13 n.9.

Plaintiffs also rely on an official report of the Maryland State Police concerning the number and distribution of State issued carry permits. See Complaint, ¶ 62 & Exh. E; P. Mem. at 15-16. That data indicates only 1% of carry permits have been issued to County residents. Specifically, tens of thousands of permits have been issued to residents of immediately adjoining counties whose residents are most likely to work at or visit the County as part of their daily lives. Again, the County does not object to Plaintiffs' request that this Court take judicial notice of this Maryland State Police data. See P.Mem. at 16 n.2. Any suggestion that non-resident permit holders never get out of their cars when they visit the County is so facially implausible and contrary to common sense as to be laughable. The Maryland Supreme Court in *Engage Armament* was more than willing to set aside Bill 21-22's regulation of permit holders based on far *less* data. See *Engage Armament,* 494 Md. at 70 (noting the burden on permit holders, "including the many

who reside outside the County but drive within it"). The "scope" of Bill 23-26 and the "evidence of its effects" on travel makes clear that Section 57-10 and Section 57-11(a) are general laws. *Id.,* 494 Md. at 70 n.23.

## II. Sections 57-10 Is Preempted

Relief is also appropriate under Count II because Section 57-10 has been amended in a way that exceeds the bounds of the County's authority under MD Code, Criminal Law, § 4-209(b)(1). See P.Mem. at 17. As *Engage Armament* holds, "[a]ny local firearm regulation that does not fit within the scope of that authorization is expressly preempted by, among other provisions, § 4-209(a)." *Engage Armament*, 494 Md. at 13. As expected, the County asserts that Section 57-10 is saved by Section 2 of the 1985 law, 1985 Maryland Laws Ch. 724, § 2, which preserves any local law that was on the books as of December 31, 1984. That argument fails because Bill 23-26 amends Section 57-10 to regulate firearms outside of the places of public assembly allowed by Section 4-209(b)(1)(iii), thereby making Section 57-10 inconsistent with the authority otherwise granted by Section 4-209(b)(1)(iii). Any amendment to an existing law that creates such an "inconsistency" is barred by Section 4-209(c). See P.Mem. at 17-18.

The County never responds to this reality. Instead, the County argues that carry of a handgun by permit holders falls within the "lawful mission" exception of Section 57-10 in light of the amendments made by Bill 23-26. Co.Mem. at 18.Those amendments provide that Section 57-10 does not apply to a firearm "in a motor vehicle, locked in a container" or to "a handgun worn, carried or transported" by a permit holder in compliance with State law. Co.Exh. 13. But the reality remains that these amendments made to Section 57-10 by Bill 23-26 are not limited to areas in which the County has authority to regulate under Section 4-209(b)(1)(iii), as construed by *Engage Armament*. As thus amended, Section 57-10 remains broadly applicable County-wide.

That makes the amendments inconsistent with the limitations imposed by Section 4-209(b)(1)(iii) and therefore barred by Section 4-209(c).

The County contends that those amendments "did not expand" the scope of Section 57-10, because "[t]he County added this amendment to harmonize § 57-10 with similar language added to § 57-11(a) by Bill 23-26E to respond to the Supreme Court's *Engage Armament* conclusion that § 57-11(a) was not a local law." Co.Mem. at 18. That supposed "harmonization" does not save Section 57-10. *Engage Armament* invalidated the County's prior, very broad definition of "places of public assembly" as contrary to the limited scope of authority granted by Section 4-209(b)(1)(iii). 494 Md. at 16 (applying the *ejusdem generis* canon). That holding obviously does not give the County authority to make amendments to Section 57-10 that are inconsistent with the limited grant of authority accorded by Section 4-209(b)(1)(iii). Not even the County can pretend that the County-wide amendments to Bill 57-10 made by Bill 23-26 are limited to places of public assembly or are otherwise permitted by Section 4-209(b)(1). Section 4-209(c) bars these amendments.

## III. Section 57-10 and Section 57-11 Are Is Invalid Under The Second Amendment

The County contends that Section 57-10, as amended by Bill 23-26, is constitutional because the amendments make clear that Section 57-10 does not apply to a handgun carried by a permit holder. Co.Mem. at 20. That argument fails. As noted above, the amendments to Section 57-10 are void *ab initio* because Section 57-10 is a "general law" (Count I) and the amendments are barred by Section 4-209(c) (Count II). The amendments thus cannot save Section 57-10. As explained below, the County does not even attempt to defend the unamended version of Section 57-10 and that failure requires that Section 57-10 be struck down.

The amended version of Section 57-10 shares the same fate. Those amendments allowing carry by permit holders apply only to "handguns," not long guns; permit holders must lock all

long guns "in a container" in a vehicle. And non-permit holders must lock **all** firearms "in a container" while possessing and transporting in a vehicle. These requirements "make[] it impossible for citizens to use [these locked up firearms] for the core lawful purpose of self-defense." *District of Columbia v. Heller,* 554 U.S. 570, 630 (2008). It is especially invalid as applied to permit holders, who are authorized by State law to possess a *loaded* firearm on their person, including in a vehicle. MD Code, Natural Resources, § 10-410(c)(1). Each of the individual Plaintiffs has standing to challenge that requirement as to long guns. MSI has standing to represent its members who do not have carry permits because "MSI has one or more members who live outside of Montgomery County and do not possess a Maryland wear and carry permit, but who nonetheless possess and transport unloaded handguns and long guns as well as ammunition inside of Montgomery County and do so in accordance with State law." Complaint ¶ 53. "MSI has at least one such member who is a resident of Montgomery County and who travels in and conducts lawful activities outside of a vehicle in the County while lawfully armed under State law." *Id*. ¶ 56. See Johnston Decl. ¶¶ 7, 10.

The County argues that the unconstitutionality of the original version of Section 57-10 "is of no moment" because the Bill 23-26 amendments to Section 57-10 incorporate the State's carry permit licensing law. Co.Mem. at 21. That argument fails because, as explained above, the amendments made by Bill 23-26 to Section 57-10 exceed the County's authority under Section 4-209(b)(1)(iii) and Section 4-209(c). The County has no authority to enact a County-wide licensing scheme or incorporate the State's licensing scheme. Next, the County contends that the regulation on the possession and transport of long guns by the amended version of Section 57-10 "does not raise a valid Constitutional challenge." Co.Mem. at 21. That assertion is frivolous. The "plain text" of the Second Amendment protects the right "to keep and bear arms," not just handguns. See P.Mem. at 19; *Heller,* 554 U.S. at 581 ("'Arms' encompasses all '[w]eapons of

offence or armour of defence,' *i.e.,* 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'"). The Step One inquiry of *New York State Rifle & Pistol Ass'n. v. Bruen*, 597 U.S. 1 (2022), is thus satisfied. See *Wolford v. Lopez*, 146 S.Ct. 2032, 2043 (2026) ("does the law place *any restrictions* on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms?") (emphasis added). "[I]f a challenged law falls within the plain text of the Second Amendment, it is presumptively unconstitutional." *Id.* at 2044. The County makes no attempt to carry its burden under Step Two. *Bruen*, 597 U.S. at 69.

With respect to Section 57-11(a), the County does not deny the bans imposed by Section 57-11(a)'s 100-yard gun-free zones encompass thousands of locations that are private property open to the public. A less stringent version of such a ban was expressly struck down in *Wolford* and in *Kipke v. Moore*, 165 F.4th 194, 218-19 (4th Cir. 2026). That the County accomplishes the same unconstitutional end through different means does not make the result constitutional. See *SFFA v. Harvard*, 600 U.S. 181, 230 (2023) ("'[W]hat cannot be done directly cannot be done indirectly'" because "'[t]he Constitution deals with substance, not shadows.'"), quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325 (1867).

The County does not dispute that Section 57-11(a)'s bans are even more severe than the Hawaii law at issue in *Wolford* or the Maryland law struck down in *Kipke*. Instead, the County argues that Section 57-11(a) merely imposes sensitive area restrictions which the Supreme Court did not address in *Wolford.* That argument ignores *Wolford*'s **holding** that "the Second Amendment protects[] the right of Americans to carry arms for self-defense as they go about their daily lives." 146 S.Ct. at 2041. Again, the comprehensive bans imposed by Section 57-10 and Section 57-11(a) deprive permit holders of that basic right. See P.Mem. at 14-16.

The County also errs in its reliance on the Ninth Circuit's subsequent reaffirmance of its prior sensitive places rulings on remand. Co.Mem. at 24. See *Wolford v. Lopez,* --- F.4th ----2026

WL 2291925 (9th Cir. Aug. 10, 2026). Unlike Section 57-11(a), the Hawaii and the California laws at issue in *Wolford* did not create any 100-yard exclusionary zones. Indeed, the Ninth Circuit struck down Hawaii's bans in "parking lots shared by government buildings and non-governmental buildings." *Woldford v. Lopez*, 116 F.4th 959, 1002 (9th Cir. 2024). The Ninth Circuit likewise struck down California's bans "with respect to hospitals and similar medical facilities, public transit, gatherings that require a permit, *places of worship*, financial institutions, *parking areas and similar areas connected to those places*." 116 F.4th at 1003 (emphasis added). In contrast, Section 57-11(a)'s bans "include[] all property associated with the place, such as a parking lot or grounds of a building" and thus not only bans firearms in all adjacent parking areas, but then extends those bans for another 100 yards as measured from the outer edge of those parking lots. Nothing in the Ninth Circuit's decision in *Wolford* supports the County's 100-yard gun-free zones.

The County asserts that Plaintiffs "ignore" the Fourth Circuit's decision in *Kipke*. Co.Mem. at 25. Hardly. Plaintiffs expressly rely on *Kipke*'s holding that Maryland's presumptive ban on firearms on private property open to the public "would effectively declare most public places 'gun-free zones'" and that result "likely stretches the sensitive places doctrine too far." 165 F.4th at 218-19. See P.Mem. at 6, 24-26. The County's bans "effectively" do the same thing, especially as applied to the urban areas of the County where permit holders carry as they go about their daily lives. See *Bruen*, 597 U.S. at 31 ("there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place'"). None of the State laws at issue in *Kipke* involved 100-yard gun-free zones. P.Mem. at 6-7.

*Kipke* was also decided before *Wolford* and thus while *Wolford* confirms *Kipke*'s invalidation of Maryland's presumptive ban on firearms on private property, any reliance on *Kipke*'s other rulings would be premature. The odds are high that the Supreme Court will at least

GVR *Kipke* for further consideration in light of *Wolford*, just as the Court did in **27** cases after *Rahimi*. See Motion to Stay Mandate, at 3-4, *Kipke v. Moore,* No. 24-1799(L), Dkt. # 89 (Jan. 30, 2026). The Fourth Circuit recognized that reality by staying its mandate in *Kipke* pending a decision on plaintiffs' pending petition for certiorari, thereby leaving this Court's broader injunction in place. See P.Mem. at 26 n.4.[2]

Equally misplaced is the County's heavy reliance on *MSI v. Montgomery Co*., 680 F.Supp.3d 567 (D.Md. 2023) ("*MSI*").[3] Fundamentally, *MSI* is incompatible with *Wolford*'s holding that "the Second Amendment protects[] the right of Americans to carry arms for self-defense as they go about their daily lives." 146 S.Ct. at 2041. Again, the comprehensive bans imposed by Section 57-10 and Section 57-1(a) effectively make such carry impossible in the County as practical matter. The County ignores that holding.

*MSI* has also been effectively abrogated by other, more recent decisions. For example, *MSI* erred in agreeing with the panel's decision in *NRA v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023), that "[h]istorical sources from the Reconstruction Era are *more probative* of the Second Amendment's scope than those from the Founding Era." 680 F.Supp. at 582 (emphasis added). That panel decision in *Bondi* was subsequently vacated, 72 F.4th 1346 (11th Cir. 2023), and on rehearing, the en banc court reversed that ruling, holding that "[t]he Supreme Court has warned against the overuse of history from Reconstruction." *NRA v. Bondi*, 133 F.4th 1108. 1116 (11th Cir. 2025) (en banc), *cert. denied sub. nom, NRA v. Glass*, 2026 WL 1871313 (U.S. Jun 30, 2026).

[2] The State has recently withdrawn its petition for certiorari in *Kipke*. *Moore v. Kipke*, No. 25-1206, *petition dismissed* (U.S. Aug. 13, 2026).

[3] The plaintiffs' appeal in *MSI* is being held in abeyance pending a decision on the *Kipke* petition. *MSI v. Montgomery Co,* No. 23-1719, Dkt. # 137 (4th Cir. May 22, 2026).

That en banc ruling was correct. The Supreme Court has since made clear that "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck *by the founding generation* to modern circumstances.'" *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (citation omitted) (emphasis added). See also *id.* ("Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding."). That focus is repeated throughout *Rahimi. Id.* at 694, 698. Similarly, in *Wolford*, the Court rejected an 1893 Oregon law, holding that "a lone statute adopted nearly a century after the adoption of the Second Amendment and well after the adoption of the Fourteenth Amendment sheds little if any light on the meaning of the Second Amendment right." 146 S.Ct. at 2053.

Since *Rahimi*, several other courts of appeals have held that the Founding era is the primary source for conducting the *Bruen* Step Two analysis. See *ANJRPC v. Attorney General of New Jersey*, 183 F.4th 211, 232 (3d Cir. 2026) (en banc) ("we must look to Founding-era laws for analogies to modern-day regulations"); *Lara v. Commissioner*, 125 F.4th 428, 441-42 (3d Cir. 2025), *cert. denied,* 2026 WL 1871315 (U.S. Jun. 30, 2026) (same); *Worth v. Jacobson*, 108 F.4th 677, 696 (8th Cir. 2024), *cert. denied*, 145 S.Ct. 1924 (2025) (same); *United States v. Connelly*, 117 F.4th 269, 281 (5th Cir. 2024) (same); *Reese v. ATF*, 127 F.4th 583, 599-600 (5th Cir. 2025) (same). Since *Rahimi*, **no court** has suggested that Reconstruction era laws are "more probative." Even *Kipke* states that "sources we look to at *Bruen* step two can come throughout American history." 165 F.4th at 207. This body of precedent is controlling.

*MSI*'s erroneous focus on Reconstruction era and later history was central to its analysis and that error fatally undermines the Court's opinion. For example, *MSI* relied exclusively on Reconstruction era and late-19th century analogues in sustaining the County's ban on arms in places of worship. 680 F.Supp.3d at 584-85. In contrast, the Ninth Circuit in *Wolford* struck down

California's ban on firearms at places of worship, relying on Founding era analogues and expressly rejecting the very post-1868 analogues on which *MSI* relied. *Wolford v. Lopez*, 116 F.4th 959, 996 (9th Cir. 2024) ("From the colonial times through the ratification of the Second Amendment and continuing through the ratification of the Fourteenth Amendment, Defendant has not pointed to a single regulation banning firearms at places of worship or at any analogous place."). The County ignores that decision. Notably, the General Assembly did not designate places of worship as a sensitive area in enacting SB 1. P.Mem. at 6-7; Complaint, ¶30. See also P.Mem. at 26 & n.3; *Ezell v. City of Chicago,* 846 F.3d 888, 895 (7th Cir. 2017) (invalidating a law banning ranges within 100 feet of a place of worship).

*MSI* also ruled that **"**the considerations of 'how and why' historical regulations burden rights relating to firearms are applicable not when there is clear historical example of the exact same type of regulation." 680 F.Supp. at 586. That ruling was also error. See *Wolford*, 146 U.S. at 2060 (Barrett, J., concurring) ("The State seems to think *Bruen* is a matching game: Southern States enacted broad default rules, Hawaii reasons, so it can do the same today"). *Wolford* squarely holds that the "relevantly similar" inquiry **"***requires* consideration of 'how' the analogue restricted the keeping or bearing of arms—that is, whether it imposed a restriction similar to that imposed by the challenged law." 146 S.Ct. at 2044 (emphasis added). *Wolford* makes clear that an analogue must be "widespread, well-known, and widely accepted." 146 S.Ct. at 2053. The isolated Reconstruction era and later municipal laws and territorial laws cited in *MSI* fail that test, as they are both too late and affected a "miniscule" percentage of the American population. *Bruen,* 597 U.S. at 68. In particular, "territorial restrictions deserve little weight." *Id*. at 69.

There are no historical analogues from any relevant period for legislation that creates thousands of often interlocking, 100-yard gun-free zones like those imposed by Section 57-11(a), or that create the type of restrictions imposed by Section 57-10. The County is a true outlier even

in modern times. As intended, the cumulative effects of Section 57-11(a) and Section 57-10 effectively eviscerate Plaintiffs' right "to carry arms for self-defense as they go about their daily lives." See *Koons v. Attorney General New Jersey,* 156 F.4th 210, 301 (2025) (Porter, J. dissenting) ("The majority's one-by-one approach never even considers whether our national regulatory tradition countenances the cumulative burden of [New Jersey's] requirements and prohibitions on the right to carry for self-defense"), *majority opinion vacated on the grant of rehearing en banc*, 162 F.4th 100 (3d Cir. 2025) (en banc).

*Rahimi* makes clear that any regulation of arms-bearing conduct must be "for a permissible reason." 602 U.S.at 692. P.Mem. at 19-22. *Wolford* emphasized that a court "*must* also consider 'why' the analogue restricted the keeping or bearing of arms—that is, whether its rationale was similar to that of the new law." 146 S.Ct. at 2044 (emphasis added). *Wolford* thus rejected Hawaii's reliance on historical analogues from the Founding era that banned arms on private property, holding that the underlying rationale for these laws (control of poaching and trespass) was not relevantly similar to Hawaii's ban on arms at "retail establishments that residents of cities and suburbs frequent as part of their daily routines." 146 S.Ct. at 2052. These laws could not justify a ban on a person who is lawfully carrying a concealed handgun for self-defense "from entering many places that people routinely visit in the course of their daily routines, such as gas stations, convenience stores, restaurants, coffee shops, drug stores, grocery stores, 'big box' stores, home improvement stores, barber shops or hair salons, dry cleaners, and laundromats." 146 S.Ct. at 2041. The sworn Declarations of Plaintiffs make clear Section 57-11(a) bars the individual Plaintiffs and MSI members from entering such places as part of their daily lives. The County does not dispute it.

That "why" inquiry is especially fatal to Bill 23-26. Tellingly, the County does not dispute that only rationale for the County's bans is that the County's political leadership intensively

dislikes firearms in public spaces. P.Mem. at 28. See also County Exec., Media Briefing, beginning at 24:25, https://perma.cc/2RP9-76Y7 (Aug. 5, 2026) (complaining that the Supreme Court and Plaintiffs have "gone way far in the other direction from rationality"); https://perma.cc/7GVC-SFDV (County Notice of Bill 23-26 signing) (July 27, 2026). The County has no response to Plaintiffs' point (P.Mem. at 29) that dislike of the constitutional right to carry in public is not a "permissible reason" for imposing restrictions on the right. *Rahimi,* 602 U.S. at 692. "Mere disapproval of protected conduct is not a valid reason to severely restrict it." *Wolford,* 146 S.Ct. at 2058 (Barrett, J., concurring). Like Hawaii in *Wolford*, the County "offers no evidence that these laws were designed to vindicate the community's aversion to people carrying guns in public." *Id.*

**IV. A Preliminary Injunction Is Appropriate**

The ongoing deprivation of a constitutional right inflicts irreparable injury. Full stop. See P.Mem. at 8-11. This Court so held in *Kipke v. Moore*, 695 F.Supp.3d 638, 662 (D.Md. 2023), *aff'd in part,* 165 F.4th 194 (4th Cir. 2026), in granting a preliminary injunction. The County ignores that holding. As *Kipke* also held, the government has no legitimate interest in the enforcement of an unconstitutional law and thus cannot be harmed by an injunction. *Id.* at 662-63. The balance of equities thus favors Plaintiffs. The County's reliance on *MSI* is misplaced in multiple ways. Co.Mem. at 26. First, *MSI* never considered the State law claims adjudicated in *Engage Armament*, which is controlling precedent on Counts I and II. Second, as discussed above, *MSI* has been overtaken by subsequent decisions of the Supreme Court in *Rahimi, Wolford* and *United States v. Hemani*, 146 S.Ct. 1677 (2026), the Fourth Circuit's decision in *Kipke*, the en banc decision in *Bondi*, and the Ninth Circuit's decision in *Wolford*.

The County also wrongly argues that it has imposed the same restrictions since 1997 so there is no immediate harm. Co.Mem. at 26. In fact, the County did not abolish its exception for

permit holders until Bill 21-22 was enacted November 28, 2022, after *Bruen*. See *Engage Armament,* 494 Md. at 22. Bill 21-22 also amended Chapter 57 to vastly (and illegally) expand the scope of Section 57-11(a). *Id.* at 15-17. The number of permit holders in Maryland, and the consequent harm created by the County's law, has grown dramatically since *Bruen*. See Complaint, ¶ 62 & Exh. E. The threat of enforcement is the same as it is for "every other law." https://perma.cc/7MUF-8EZX. *Engage Armament* imposes limits on the County's authority regardless of the County's past practices. That the *MSI* plaintiffs did not challenge Section 57-10 is irrelevant. Section 57-10 and Section 57-11(a) were amended by Bill 23-26, thus creating a new cause of action. *MSI*'s adjudication of Bill 21-22 on a motion for a preliminary injunction is not a final judgment on the same cause of action and thus cannot be *res judicata* as to Bill 23-26, much less bind the *different* individual plaintiffs in this case. See *Richardson v. Shapiro & Brown, LLP,* 751 Fed.Appx. 346, 348 (4th Cir. 2018) (collecting case law). Contrary to the County's assertion, State law does not bar the "same conduct." Co.Mem. at 27. See P.Mem. at 6-7; Complaint, ¶¶ 23-31.

**CONCLUSION**

Plaintiffs' motions should be granted.

Respectfully submitted,

*/s/ Mark W. Pennak*

Matthew Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
Larosieremm@gmail.com
District Court Bar # 32471
Phone: (561) 452-7575

Mark W. Pennak
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd, Ste. C #1015
Baltimore, MD 21234
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar # 21033

Dated: August 31, 2026

*Counsel for Plaintiffs*